**METROFLIGHT, INC., Appellant,**

**v.**

**Surry SHAFFER and the Shaffer Insurance Agency, Appellee.**

**No. 19636.**

Court of Civil Appeals of Texas, Dallas.

March 16, 1979.

Rehearing Denied April 12, 1979.

Randall A. Hopkins, Baker & Botts, Houston, for appellant.

William N. Hamilton, Stephen L. Baskind, Vial, Hamilton, Koch, Tubb, Knox & Stradley, Dallas, for appellee.

Before GUITTARD, C. J., and AKIN and ROBERTSON, JJ.

AKIN, Justice.

On this appeal from a summary judgment, the principal question is whether the appellant's cause of action is barred because appellant asserted facts in this suit which were inconsistent with facts asserted against another party in a prior suit, and appellant accepted benefits in settlement of that prior suit. Appellant Metroflight previously sued its insurance carriers in federal court claiming insurance coverage. Metroflight dismissed the federal suit after it accepted an out of court settlement. Metroflight then brought the present suit against its insurance agent, appellee Shaffer, in state court for failure to obtain adequate insurance. Shaffer was granted a summary judgment against Metroflight based upon the election of remedies doctrine. We hold that the trial court properly granted summary judgment in favor of Shaffer be-

cause Metroflight is barred by the doctrine enunciated in *Lomas & Nettleton Co. v. Huckabee,* 558 S.W.2d 863 (Tex.1977) (per curiam). Accordingly, we affirm.

*I. Metroflight v. Southern Marine and Argonaut—The Federal Suit.*

In 1974, an airplane crashed which was owned by appellant Metroflight, a common carrier airline. Metroflight instituted a declaratory judgment action in federal court in 1974 against Southern Marine and Aviation Underwriters, Inc. and Argonaut Insurance Company, the companies from which Metroflight's insurance agent had secured insurance for Metroflight. Appellee Shaffer, Metroflight's insurance agent, had the responsibility of counseling Metroflight with respect to its insurance requirements and for securing Metroflight's insurance policies. In 1972, Shaffer advised Metroflight that new insurance policies would be financially desirable, and he chose Southern Marine and Argonaut to be the insurance underwriters after he had prepared specifications and had obtained competitive bids. In contrast to the insurance coverage held by Metroflight prior to 1972, the new insurance policies recommended by Shaffer rendered part of Metroflight's air operations uninsured because of a certain pilot endorsement. This pilot endorsement, which was not contained in the specifications prepared by Shaffer, excluded from coverage any loss unless the pilot had attended specific flight training schools within the preceding ninety (90) days and was so listed with the insurer. This insurance policy was renewed in 1973, but Shaffer never informed Metroflight that the pilot endorsement exclusion would leave part of their operations uninsured, and Metroflight did not learn of the lack of coverage until after the crash. A few days after the crash in 1974, Metroflight hired a law firm to investigate whether the insurance procured by Shaffer provided coverage for the crash, and within six weeks after the crash, Metroflight brought a declaratory judgment action in federal court against its insurance carriers, Southern Marine and Argonaut. This federal suit was brought as a result of

Shaffer's representations to Metroflight that the insurers had assured Shaffer that the insurers would not deny coverage by asserting the pilot endorsement.

In its pleading in the federal suit, Metroflight claimed that the insurance policy covered the losses sustained by the crash. Metroflight also alleged that the insurers should be estopped from asserting the pilot endorsement as a defense because the insurers had waived the exclusion due to factual knowledge possessed by the insurers prior to the loss. Essentially, Metroflight pleaded insurance coverage. In response, the insurance carriers denied that Metroflight was entitled to any relief under the insurance policy. The insurance carriers argued that coverage was excluded by the pilot endorsement because the pilot involved in the crash had not met the requirements of the endorsement.

In 1976, Metroflight and the insurance companies executed a settlement agreement, and the federal suit was dismissed with prejudice. This settlement was accomplished after lengthy and detailed pretrial discovery which indicated: (1) that Metroflight was indeed operating outside the scope of the pilot endorsement; (2) that the insurers had not waived this endorsement; and (3) that they were not estopped from asserting it. The settlement agreement provided that Southern Marine and Argonaut would pay eighty percent of all claims against Metroflight arising from the crash. The payments by the insurance companies were termed "loans" to Metroflight; however, Metroflight was obligated to pay back these loans only if it recovered a judgment against Shaffer in a subsequent suit. The settlement agreement stipulated, therefore, that Metroflight would sue Shaffer for Shaffer's alleged failure to secure appropriate insurance coverage, and if it recovered damages from Shaffer, Metroflight would then use the proceeds to repay the loans from Southern Marine and Argonaut. In effect, the insurance companies partially paid the claims and were subrogated to Metroflight's claim against Shaffer.

## II. Metroflight v. Shaffer—The State Suit.

In February of 1977, Metroflight filed this action against Shaffer in state court. Metroflight based its lawsuit upon the following causes of action: (1) breach of duty by an agent for various omissions and errors; (2) breach of contract; (3) negligence; (4) breach of fiduciary duty; and (5) violation of the Texas Deceptive Trade Practices-Consumer Protection Act. Shaffer's three defenses on which the trial judge granted summary judgment included: (1) the election of remedies doctrine; (2) the two-year statute of limitations; and (3) Metroflight's lack of consumer status under the Deceptive Trade Practices Act. We address only the election of remedies question since that issue is dispositive of this case.

Metroflight asserts five arguments in support of its claim that the trial judge erred in holding that this suit was barred by the settlement in the federal suit: (1) the alleged inconsistent remedies in the federal and state suits do not arise from the same state of facts, and thus, the election of remedies doctrine is inapplicable; (2) Shaffer was not a party to the federal declaratory judgment action nor was he a party to the contract sought to be enforced therein; (3) the state suit, in contrast to the federal action, concerned the assertion of distinct causes of action against different persons arising out. of different transactions; (4) Metroflight's election was not an informed election in view of Shaffer's misrepresentations; and (5) the election of remedies doctrine is an equitable doctrine which cannot be used to aid wrongdoers, such as Shaffer. We conclude, however, that the per curiam opinion of the supreme court in Lomas & Nettleton Co. v. Huckabee, 558 S.W.2d 863 (Tex.1977), is controlling here and necessitates an affirmance of the summary judgment on the ground that Metroflight's suit is barred by the settlement of the federal suit.

## III. Lomas and Nettleton v. Huckabee.

The facts in Lomas & Nettleton v. Huckabee are analogous to the facts here, and since this case rests upon the Huckabee opinion, a discussion of Huckabee is necessary. Plaintiff Huckabee purchased a fire insurance policy from American States Insurance that covered loss to his realty as well as loss to his personal possessions. This policy was sent to Lomas & Nettleton, but they refused to accept the policy although funds were available in Huckabee's escrow account to pay the premium. Lomas & Nettleton returned the policy to American States for cancellation and then, through its own agent, purchased a fire insurance policy with Republic Insurance covering the realty but not Huckabee's personalty. Thereafter, a loss was sustained by fire; the insurance companies denied coverage, and Huckabee sued them. American States filed a third-party action against Lomas & Nettleton asserting that its policy was not in effect because Lomas & Nettleton had refused to accept it and that if it had any liability to Huckabee, it was entitled to be indemnified by Lomas & Nettleton. Huckabee settled with Republic Insurance for one-half of the loss sustained to the realty and dismissed Republic. Next, Huckabee settled with American States for another one-half of the loss to his realty, and for eighty percent of the loss to his personalty. The latter settlement was in the nature of a "loan" to Huckabee to be repaid only if Huckabee was successful in recovering against Lomas & Nettleton. After settlement, Huckabee dismissed American States with prejudice and then amended his petition to include Lomas & Nettleton, alleging that Lomas & Nettleton wrongfully refused to accept the tendered American States policy, and thus, was liable to Huckabee for the loss of his personalty. The trial court sustained a motion for summary judgment in favor of Lomas & Nettleton on the ground that by suing the insurance companies and accepting settlements, Huckabee had elected his remedy and was barred by the election of remedies doctrine from asserting a claim against Lomas & Nettleton for loss of his personalty. The Waco Court of Civil Appeals, Huckabee v. Lomas & Nettleton Co., 550 S.W.2d 371

(Tex.Civ.App.—Waco 1977), reversed on the ground that the election of remedies doctrine did not apply because the causes of action asserted against Lomas & Nettleton and American States were distinct causes of action arising out of independent transactions with different entities. 550 S.W.2d at 373.

■ The supreme court reversed the Waco Court of Civil Appeals and affirmed the trial court on the ground that the election of remedies doctrine applied. *Lomas & Nettleton Co. v. Huckabee*, 558 S.W.2d 863 (Tex.1977). The supreme court reasoned that the transactions were "interconnected as a part of the same effort by the Huckabees to secure insurance on their household personalty", and thus, the transactions between Huckabee and American States on the one hand, and between Huckabee and Lomas & Nettleton on the other, were not independent. 558 S.W.2d at 865. It was upon this analysis that the supreme court distinguished its opinion in *Custom Leasing, Inc. v. Texas Bank & Trust Co.*, 491 S.W.2d 869 (Tex.1973). The supreme court's *per curiam* opinion in *Huckabee* concluded that Huckabee had pursued inconsistent and repugnant remedies; the suit and settlement with American States affirmed coverage, whereas, the suit against Lomas & Nettleton admitted non-coverage. In the present case, Metroflight asserted coverage in the federal court suit and obtained a substantial settlement in that suit. Under the *Huckabee* rationale, that assertion was inconsistent with this action against Shaffer for breach of his fiduciary duty and contract in failing to obtain the coverage requested by Metroflight. The same fact, insurance coverage, was both affirmed and denied by Metroflight. Consequently, under the rule in *Huckabee*, we must reluctantly characterize the two allegations as being inconsistent. Since the facts asserted in federal and state court were inconsistent, and since Metroflight received valuable consideration from their settlement agreement of the federal suit, we are constrained to hold that appellant is barred from suing Shaffer for failing to obtain the required insurance coverage. *Lomas & Nettleton*

*Co. v. Huckabee*, 558 S.W.2d 863 (Tex.1977) (per curiam).

*IV.  Election of Remedies.*

Our reluctance to follow *Huckabee* has prompted us to take a careful look at that decision and the election of remedies doctrine. Metroflight first points out that prior to *Huckabee*, the Texas Supreme Court emphasized that the scope of the election of remedies doctrine should not be broadened. In *Custom Leasing, Inc. v. Texas Bank & Trust Co.*, 491 S.W.2d 869, 871 (Tex.1973), the court stated that "the doctrine of election of remedies is not a favorite of equity and that its scope should not be extended." The court has also referred to the election of remedies doctrine as " 'a harsh, and *now largely obsolete rule . . . .' "* *Slay v. Burnett Trust*, 143 Tex. 621, 187 S.W.2d 377, 393 (1945), quoting *Friederichsen v. Renard*, 247 U.S. 207, 312, 38 S.Ct. 450, 452, 62 L.Ed.2d 1075, 1083 (1918). [Emphasis added].

Metroflight makes a strong argument that the traditional election of remedies doctrine should have no application to the present suit and asserts that neither the facts in this case nor the facts in *Huckabee* called for an application of that doctrine. It points out that an application of the election of remedies doctrine requires that there must *actually* exist two valid but inconsistent remedies, and the remedy in question must be inconsistent with the other previously invoked. *White v. Bell*, 290 S.W. 849, 851 (Tex.Civ.App.—Waco 1927, writ ref'd); *United States v. Oregon Lumber Co.*, 260 U.S. 290, 43 S.Ct. 100, 67 L.Ed. 261 (1922) (Brandeis, J., dissenting). It relies on Texas cases holding that the election of remedies doctrine "does not apply unless the claimant actually has two valid and available remedies at the time he makes his election." *Poe v. Continental Oil & Cotton Co.*, 231 S.W. 717, 719 (Tex.Comm'n.App. 1921, jdgmt. adopted). Thus it is said that the claimant's "supposition that he had a particular remedy and his effort to enforce it is immaterial, and does not constitute an election, unless the remedy in fact existed."

*Bandy v. Cates,* 97 S.W. 710, 711 (Tex. Civ.App.1906, writ ref'd); *see Schenck v. State Line Telephone Co.,* 238 N.Y. 308, 144 N.E. 592, 593 (1924) (per Cardozo, J.). The fact that a plaintiff may sue thinking that he has a remedy which in fact or in law does not exist, and therefore his suit fails, has been held not to be an election under the election of remedies doctrine. *Linz v. Eastland County,* 39 S.W.2d 599, 606 (Tex.Comm'n.App.1931, holding approved); *Snow v. Alley,* 156 Mass. 193, 30 N.E. 691, 692 (1892) (per Holmes, J.)

We recognize the force of the argument that if a plaintiff realizes in his first suit that he has no remedy, but accepts from a defendant a settlement based upon business considerations, as the insurance companies obviously did with Metroflight here, then the above rules should prevent the application of the election of remedies doctrine. From this point of view, it is immaterial that the plaintiff alleged inconsistent facts in his first suit if two inconsistent remedies did not actually exist. *Schenck v. State Line Telephone Co.,* 238 N.Y. 308, 144 N.E. 592, 593 (1924) (per Cardozo, J.). For example, here it became apparent to Metroflight after pre-trial discovery in federal court that Shaffer's representations that the insurers had waived the pilot endorsement were untrue, and thus, there was no coverage under its policies. Consequently, no remedy actually existed under the policy, even though Metroflight received the benefit of the settlement. Likewise, we recognize that in *Huckabee,* the plaintiff mistakenly thought his policy covering his personalty was in effect and apparently discovered that this was not true after suit was filed and settled on the basis that both the plaintiff and the insurance company would pursue the real culprit.

From a policy viewpoint, Metroflight argues that the *Huckabee* decision is contrary to the general policy that the law should encourage settlement of disputes, and insists that the policy of encouraging settlements outweighs the policy considerations behind the procedural estoppel applied in *Huckabee.* Due to the uncertainty of litigation, we recognize the force of the argument that a party asserting inconsistent factual positions with respect to different parties should be permitted to effect a compromise of one of his claims, pursue the other to the extent of the difference, and then permit the settling defendant to be subrogated to the extent paid plaintiff. That course is not permitted by *Huckabee* as we understand it.

At the root of most cases applying the doctrine of the election of remedies is some element either of equitable estoppel or ratification. *See generally* Note, 11 Texas L.Rev. 218, 225 (1933); *see also* Hine, Election of Remedies, a Criticism, 26 Harv.L. Rev. 707, 708 (1913).[1] For an equitable estoppel to exist, of course, there must be detrimental reliance on the part of the party asserting it. *See Seaman's Oil Co. v. Guy,* 115 Tex. 93, 276 S.W. 424, 426 (1925). Ratification, in and of itself, is not the choice of a remedy although the choice of a remedy may be ratification. For example, a party may affirm a contract voidable for lack of capacity, without invoking any remedy whatever by ratifying the voidable contract. As Justice Cardozo observed, "Often what is spoken of in opinions as to a choice between remedies is in reality a choice of 'an alternative substantive right.'" *Schenck v. State Line Telephone Co.,* 238 N.Y. 308, 144 N.E. 592, 593 (1924), quoting *U. S. v. Oregon Lumber Co.,* 260 U.S. 290, 307, 43 S.Ct. 100, 67 L.Ed. 261 (1922) (Brandeis, J., dissenting); *see* Annot., 6 A.L.R.2d 11, 23 (1949). Metroflight did not have two remedies available to it because there was no insurance coverage in view of the pilot endorsement. Thus, the traditional election

---

1. The author made the following observation at the conclusion of his research on the election of remedies doctrine:

    The result of this review of the operation and history of the doctrine may be summed up in this way: The modern rule of election of remedies is a weed which has recently sprung up in the garden of the common law, its roots stretching along the surface of obiter dicta but not reaching the subsoil of principle. The judicial gardeners through whose carelessness it has crept in should be able to eliminate it, or at least to prevent its further growth. 26 Harv.L.Rev. at 719.

of remedies doctrine as recognized by the above authorities does not apply here or in *Huckabee.*

■ It should be pointed out that *Huckabee* is not based on the satisfaction rule enunciated in *Bradshaw v. Baylor University,* 126 Tex. 99, 84 S.W.2d 703, 705 (1935), and restated in *Slay v. Burnett Trust,* 187 S.W.2d at 393. The satisfaction doctrine is predicated upon the theory that it would be manifestly unjust to permit a plaintiff double recovery for a single loss. *See Deal v. Madison,* 576 S.W.2d 409, 419–20 (Tex.Civ. App.—Dallas 1978, writ ref'd n. r. e.). In *Huckabee,* the supreme court did not even permit plaintiffs to recover the excess of their loss over the settlement they had received although the court of civil appeals had indicated that they could recover at least that amount.

### V. Judicial Estoppel.

Neither can the *Huckabee* case be classified under the doctrine of judicial estoppel as ordinarily understood because the pleadings in the former suit were not under oath. The supreme court in *Long v. Knox,* 155 Tex. 581, 291 S.W.2d 292, 295 (1956) stated this doctrine as follows:

> The doctrine of judicial estoppel is not strictly speaking estoppel at all but arises from positive rules of procedure based on justice and sound public policy. It is to be distinguished from equitable estoppel based on inconsistency in judicial proceedings because the elements of reliance and injury essential to equitable estoppel need not be present. "Under the doctrine of judicial estoppel . . . a party is estopped merely by the fact of having alleged or admitted in his pleadings in a former proceeding *under oath* the contrary to the assertion sought to be made." [citations omitted; emphasis added.]

It has likewise been held that it is not necessary that the party invoking this doctrine have been a party to the former proceeding. This doctrine was developed in the nineteenth century in Tennessee and was predicated upon the rationale that parties should not misuse the judicial system by taking inconsistent positions under oath in different proceedings. It has also been referred to as estoppel by oath. *See* Note, 11 S.W.L.J. 96 (1957); *see also Sartain v. Dixie Coal & Iron Co.,* 150 Tenn. 633, 266 S.W. 313, 316–18 (1924). Since the doctrine is based upon these considerations, a defense to the application of the doctrine is to show that the prior sworn pleadings were based upon mistake or fraud. *Johnson Service Co. v. Transamerica Insurance Co.,* 485 F.2d 164, 174–75 (5th Cir. 1973). This basis for the doctrine of judicial estoppel is not present here since Metroflight did not allege coverage in the federal suit under oath, but made the assertions of coverage mistakenly under belief that the insurers were estopped from asserting the pilot endorsement.

### VI. The Huckabee Rationale.

The apparent rationale of *Huckabee* is not election of remedies in the traditional sense of a choice between two inconsistent remedies arising from the same state of facts. Rather it seems to be a species of judicial estoppel based on the principle that a party should not be permitted to abuse the judicial process by obtaining one recovery based first on affirming a certain state of facts, and then another recovery based on denying the same state of facts. *See generally Johnson v. Bingham,* 251 S.W. 529, 535 (Tex.Civ.App.—Galveston 1923), aff'd on other grounds, 265 S.W. 130 (Tex. Comm'n.App.1924, opinion adopted); *Sartain v. Dixie Coal & Iron Co.,* 150 Tenn. 633, 266 S.W. 313, 318 (1924). According to *Huckabee,* since the purpose of the rule is not primarily to prevent unjust enrichment, it applies even though the sum of the two recoveries would not exceed the amount of the plaintiff's loss. Its purpose is to make sure that judgments are rendered upon an accurate determination of the facts, an objective that is thought to be frustrated if a litigant is encouraged to change his view of the facts from one lawsuit to the next. According to this rationale, if a plaintiff is permitted to recover judgment against one party on the basis of an affirmative finding

on a crucial fact issue and then reverses his position in order to recover another judgment based on a negative finding on the same issue, injustice has been done because one of the two fact findings must be wrong.

*Huckabee* also stands for the proposition that a settlement of the first claim is equivalent to a judgment. It assumes that just as a party ought not to be able to reverse his position on the facts after obtaining a judgment based on a particular allegation, neither should he be able to do so after he has obtained a settlement based on such an allegation. In each instance, he has obtained a benefit by using the judicial process to assert a particular factual premise, and if he subsequently obtains a judgment based on the opposite premise, that judgment would establish that the benefit first received was not one to which he was properly entitled. Acceptance of such a benefit seems to be regarded as equivalent to the oath ordinarily required for judicial estoppel.

Application of the *Huckabee* rule is illustrated by *Aetna Life Ins. Co. v. Bocanegra,* 572 S.W.2d 355 (Tex.Civ.App.—San Antonio 1978, writ granted). Plaintiff in that case first filed a worker's compensation claim alleging a job related injury. She received compensation for this claim. She then sued under a group health insurance policy which only covered non-occupational injuries. The court ruled that the plaintiff was estopped to bring the second suit citing *Huckabee.* The court explained that the *Huckabee* rule lacked the elements of reliance and injury required for an equitable estoppel and was "more a matter in the nature of a positive rule of procedure based on manifest justice." 572 S.W.2d at 356.

*Huckabee* would not leave a party without remedy if he is genuinely uncertain about the existence of a crucial fact on which his rights depend. He may plead in the alternative under Rule 48 of the Texas Rules of Civil Procedure. Also, under Tex. R.Civ.P. 51, he may pray in the alternative for recovery against a second defendant in the event a crucial fact alleged in his claim against the first defendant is not true. He may then testify honestly concerning the facts as he understands them and accept whatever recovery the court allows after determining the true facts. In such a situation, unlike *Huckabee* and the present case, neither defendant is required to pay what a court ultimately determines he should not have been required to pay.

These considerations demonstrate that the election recognized in *Huckabee* is not an election between two inconsistent remedies available as a result of the same wrong (as an election between damages and restitution) or an election between two inconsistent rights arising simultaneously from different facts (as an election to take under a will property to which the devisee has an independent right). The inconsistency lies not in the remedy or in the right but in the allegation of facts on which both right and remedy depend. Consequently, under *Huckabee,* the parties to the successive suits may be different and the causes of action distinct, but the second suit is barred if the plaintiff must deny in the second suit a fact that he has affirmed in the first and has obtained a benefit from affirming. That fact here, as in *Huckabee,* is coverage of certain losses by certain policies of insurance.

This rationale for *Huckabee* may not be stated in detail in the *per curiam* opinion, but it must be considered in any proper evaluation of the decision in the light of authorities dealing with election of remedies. The soundness of the rule may be doubtful, and opposing policy arguments may be persuasive, but the decision must be taken as resolving the matter authoritatively for the purpose of this present case.

Affirmed.