SKANDIA AMERICA REINSURANCE
CORPORATION, Appellant,

v.

FINANCIAL GUARDIAN GROUP and
World American Underwriters,
Respondents.

No. WD 46292.

Missouri Court of Appeals,
Western District.

May 4, 1993.

Motion for Rehearing and/or Transfer to
Supreme Court Denied June 29, 1993.

Application to Transfer Denied
Aug. 17, 1993.

---

James R. Hobbs, Kansas City, for appellant.

Robert William Cotter, Kansas City, for respondents.

Before FENNER, P.J., and TURNAGE and KENNEDY, JJ.

KENNEDY, Judge.

This is an appeal by plaintiff Skandia America Reinsurance Corporation from a summary judgment for defendants Financial Guardian Group, Inc., and World American Underwriters, Inc.

We reverse and remand for further proceedings.

Skandia's claim against the defendants—which was asserted as an alternative claim to its primary claim against Omaha Indemnity Company on a Stop Loss Agreement, as will be explained later—was for the alleged failure of Financial Guardian and World American to secure from Omaha Indemnity Company a valid and binding Stop Loss Agreement, by which Omaha Indemnity Company would indemnify Skandia for losses paid by Skandia on Skandia's contract to reinsure risks of Angelina Casualty Company for the period 1981–1983.

Under Skandia's reinsurance contract, Skandia ultimately paid $12 million in losses to Angelina Casualty Company. As the losses were paid, beginning late 1984, Skandia sought reimbursement from Omaha Indemnity on its Stop Loss Agreement. Royal American Managers, which was Omaha Indemnity's managing general agent, and which had executed the Stop Loss Agreement on Omaha Indemnity's behalf, paid Skandia $3.8 million of the losses on Omaha Indemnity's behalf through early 1986. In April, 1986, Royal American Managers ceased paying the Skandia claims and Omaha Indemnity denied liability on the Stop Loss Agreement. There remained unpaid $8.2 million which Skandia sought to recover in this lawsuit.

Skandia's claims were (in contract) that Omaha Indemnity had entered into a valid Stop Loss Agreement and was bound thereby; or (in tort), if the Stop Loss Agreement was beyond Royal American Managers authority to execute, as Omaha Indemnity claimed, then Omaha Indemnity was liable to Skandia for negligent appointment of its managing general agent, Royal American Managers, and for negligent supervision in allowing Royal American Managers to execute an unauthorized Stop Loss Agreement in Omaha Indemnity's behalf, upon which Skandia had relied to its detriment.

Omaha Indemnity, in defense, denied it was liable on the Stop Loss Agreement because (1) Royal American Managers, Inc., was not authorized to bind Omaha Indemnity by the Stop Loss Agreement; (2) the Stop Loss Agreement was not insurance, because it was the transfer of known losses from Skandia to Omaha Indemnity; and (3) that the Stop Loss Agreement was the result of actual or constructive fraud by Skandia.

In a counterclaim against Skandia, Omaha Indemnity claimed Skandia was not entitled to retain $3.8 million it had received from Royal American Managers under the Stop Loss Agreement.

Alternatively to its contract and tort claims against Omaha Indemnity, as described above, Skandia asserted that if its claims against Omaha Indemnity should fail, and if Omaha Indemnity were found not liable to Skandia on the Stop Loss

Agreement or on the negligence claim, then Financial Guardian and World American were liable to Skandia in tort for negligence and misrepresentation for the amount which would otherwise be owing on the Stop Loss Agreement.

One count against World American, on another theory, was for breach of its promise to secure the Stop Loss Agreement.

Before trial, Skandia entered into a settlement agreement with Omaha Indemnity Company, and dismissed its claim against Omaha Indemnity with prejudice. Omaha Indemnity Company paid Skandia $3.2 million, and dismissed its $3.8 million counterclaim against Skandia with prejudice.

Having received from Royal American Managers $3.8 million of its $12 million claim, and $3.2 million from Omaha Indemnity Company, Skandia sought to proceed against Financial Guardian and World American for the $5 million balance.

Financial Guardian and World American, however, filed their motion for summary judgment on the ground that Skandia, in settling with Omaha Indemnity and dismissing its lawsuit against it, was foreclosed by the doctrine of election of remedies from proceeding against Financial Guardian and World American. This motion was successful. Summary judgment was entered for defendants, and Skandia has appealed.

Did Skandia, in settling with Omaha Indemnity and in dismissing its lawsuit against it, thereby foreclose its pursuit of the remainder of its loss against the present defendants? We hold it did not, and we reverse the summary judgment in favor of the defendants.

Defendants claim that Skandia, in settling with Omaha Indemnity and in dismissing its claim against it, made a binding election of remedies. Their argument is that Skandia's claim against Omaha Indemnity was premised upon its claim that the Stop Loss Agreement was a valid and binding obligation of Omaha Indemnity, while its claims against Financial Guardian and World denied that proposition. Hence, when Skandia accepted $3.2 million and dismissed its claim against Omaha Indemnity, it made a conclusive election of its allegation that the Stop Loss Agreement was valid and binding, and, in making that election, foreclosed itself from afterwards asserting that the Stop Loss Agreement was not valid and binding.

■ To apply the doctrine of election of remedies to foreclose Skandia from pursuing its claims against these defendants would be to extend the doctrine beyond its present boundaries in Missouri. Missouri cases have never made a mechanistic application of the election of remedies doctrine in its pristine form, without consideration to the practicalities and the equities of the case. Where a plaintiff's election of remedies has been held to defeat another inconsistent claim, there has been present in the case some element of judicial estoppel, or res judicata, or double recovery, or cause splitting, or other factor which would make inequitable plaintiff's pursuit of the inconsistent claim.[1] We find none of those factors present in the case before us. To apply the doctrine in formulaic fashion in this case would be to give the defendants an unconscionable windfall.

1. *See Davis v. Hauschild,* 243 S.W.2d 956 (Mo. 1951) (claim by plaintiff against defendants for deficiency judgment after foreclosure of deed of trust not barred by the pursuit in an earlier case of a remedy for breach of covenant in the deed of trust because remedies were consistent); *Timmons v. Bender,* 601 S.W.2d 688 (Mo.App. 1980) (plaintiffs in action for actual and punitive damages for fraud in real estate transaction were held to their election of inconsistent remedy, when it was shown defendant sellers agreed to rescind the contract of sale, and plaintiffs received back their earnest money, and thus had been restored to status quo ante); *Mitchell v.*

*Commercial Standard Ins. Co.,* 612 S.W.2d 378 (Mo.App.1980) (plaintiff who sued insurance company alleging she was entitled to reformation of fire insurance contract to show herself as insured mortgagee, or, in the alternative, that she was entitled to proceeds as the lawful assignee of the named mortgagee, could not pursue the second claim after trial and adverse judgment in the first); *State ex rel. Hilleary & Partners, Ltd. v. Kelly,* 448 S.W.2d 926 (Mo.App. 1969) (plaintiff who received temporary injunction "to (defendant's) detriment" on basis of contract was barred by election of remedies from claiming contract was invalid).

Putting aside those cases which involve inconsistent claims by a plaintiff against the same defendant,[2] which are not applicable to the circumstances of the case before us, we consider those Missouri cases where one defendant asserts as a defense to the plaintiff's claim, that the plaintiff is foreclosed by his election of another and inconsistent remedy against a different defendant. *Twellman v. Lindell Trust Co.*, 534 S.W.2d 83 (Mo.App.1976), is one such case. The doctrine of election of remedies was held not applicable. " ... (P)laintiff did not recover full satisfaction for his losses from Londe, as the doctrine of election of remedies seems to require ... It should be remembered that the purpose of the doctrine of election of remedies is to prevent double redress for a single wrong." *Twellman*, 534 S.W.2d at 94.

■ Like the plaintiff in *Twellman*, Skandia did not recover from Omaha Indemnity full satisfaction for its losses, but only partial satisfaction. The teaching of *Twellman* is that the doctrine of election of remedies does not foreclose a plaintiff from pursuing a remedy against a second defendant if plaintiff, pursuing an inconsistent remedy, has recovered from the first defendant less than his whole claim.[3]

In *United States Fidelity & Guaranty Co. v. Fidelity National Bank & Trust Co.*, 232 Mo.App. 412, 109 S.W.2d 47 (1937), the plaintiff had recovered from the first defendant the full amount of its claim. Here the doctrine of election of remedies was applied to prevent a plaintiff's recovering from one defendant what it had already recovered in full from another by an inconsistent remedy. The court stated the rule as follows:

> To summarize: the weight of authority in this and other jurisdictions seems unquestionably to be that, where one elects to pursue one of two or more inconsistent remedies, with full knowledge of all facts, *and receives full satisfaction therefrom,* he can no longer assert his cause of action and his adversary may assert the election as a defense even though such adversary has suffered no detriment and may have, in fact, profited thereby. *Id.* at 49. (emphasis supplied).

A third case is *Rister v. State Farm Mutual Auto Insurance Company*, 668 S.W.2d 132 (Mo.App.1984). There the plaintiff had brought suit against a negligent motorist, whose liability insurer denied coverage but defended the motorist under a reservation of rights. Plaintiff also, in the same petition, sued his own uninsured motor vehicle carrier, on the theory that the motorist was uninsured. The uninsured motor vehicle insurance coverage was applicable, under the language of the policy, where "the (liability insurer) denies coverage." During the course of the trial, the liability insurer settled with the plaintiff and paid a substantial sum. Plaintiff dismissed his claim against the negligent motorist, and the case was submitted against the uninsured motor vehicle insurance carrier only. The court reversed a judgment against the uninsured motor vehicle carrier, on the ground that, when the liability insurer offered and the plaintiff

---

**2.** *Whittom v. Alexander–Richardson Partnership, Inc.,* 851 S.W.2d 504 (Mo. banc 1993); *Davis v. Hauschild,* 243 S.W.2d 956 (Mo.1951); *Timmons v. Bender,* 601 S.W.2d 688 (Mo.App.1980); *State ex rel. Hilleary and Partners, Ltd. v. Kelly,* 448 S.W.2d 926 (Mo.App.1969).

**3.** The doctrine of the election of remedies is sometimes stated as follows:

"It is well settled law where a party has the right to pursue one of two inconsistent remedies, and he makes his election, and institutes his suit, that in case the action thus begun is prosecuted to final judgment, *or the plaintiff has received anything of value under a claim thus asserted,* he cannot thereafter pursue another and inconsistent remedy."

*Johnson–Brinkman Commission Co. v. Missouri Pac. R.R.,* 126 Mo. 344, 28 S.W. 870, 872 (1894). (emphasis supplied).

This statement of the doctrine of election of remedies is too broad when it says the doctrine is applied when "the plaintiff has received anything of value under his (prior, inconsistent) claim." The underlined phrase, so far as we can find, has never decided a Missouri case. The most recent statement of the election of remedies doctrine by the Supreme Court of Missouri omits the underlined phrase. *Whittom v. Alexander–Richardson Partnership, Inc.,* 851 S.W.2d at 506–507 (Mo. banc 1993).

accepted a sum in settlement, the liability insurer no longer "denied coverage." Thus, under the terms of the uninsured motor vehicle coverage, which was applicable only when "the liability insurer denies coverage," the uninsured motor vehicle insurance carrier was not liable under its policy.

The *Rister* opinion places its holding upon the language of the uninsured motor vehicle policy. Having already decided the case, what the opinion says about the application of the doctrine of election of remedies is gratuitous and tentative, and we are unable to give it much weight as authority in the case we have before us.

■ Skandia, as it approached trial, could not know whether any of its claims against Omaha Indemnity would prevail. Neither could Omaha Indemnity know. If the two litigants could reach an agreement upon their prospects and eliminate their risks, settlement was plainly indicated. It is the policy of the law to encourage settlement in such a case. *See J.A. Tobin Construction Co. v. State Highway Com.*, 697 S.W.2d 183 (Mo.App.1985). It is unlikely that Skandia would have settled with Omaha Indemnity had it known, or suspected, it was at the same time ipso facto, by the operation of the doctrine of election of remedies, releasing World American and Financial Guardian from liability.

Did Financial Guardian or World American suffer any prejudice by reason of Skandia's settlement with Omaha Indemnity? We are able to discern none. All the defenses they had against Skandia's claims before the settlement they still have. Their defensive strategy and tactics may take a different direction by reason of the settlement, but this does not qualify as prejudice in the legal sense. They may continue to assert, as a complete defense to Skandia's claims against them, that Omaha Indemnity was bound by the Stop Loss

Agreement and was liable for the entire amount of $8.2 million, as if Omaha Indemnity had paid Skandia nothing. In fact, the settlement works to defendants' advantage. Their exposure on Skandia's claims against them has been reduced by the amount of the settlement—from $8.2 million (or possibly from $12 million, if Omaha Indemnity established its $3.8 million counterclaim against Skandia) to $5 million.

Skandia, in the case before us, is in a similar position to that of plaintiff Bocanegra in *Bocanegra v. Aetna Life Insurance Company*, 605 S.W.2d 848 (Tex.1980).

In *Bocanegra,* plaintiff had filed a claim before the Industrial Accident Board for an occupational injury, i.e., a back injury incurred while lifting books at her employment. She settled this claim. Then she sued Aetna on a hospital and medical policy for her medical expenses, claiming that her illness was non-occupational degenerative disc disease. Aetna claimed that plaintiff had made a binding election of remedies in filing and settling the worker's compensation claim, and she was foreclosed from claiming in the suit against Aetna that her illness was non-occupational.

The Texas Supreme Court denied Aetna's claim that plaintiff Bocanegra was not bound by her election of remedies, because in settling her worker's compensation claim she had not made an informed choice of remedies. Her recovery in the worker's compensation claim was "highly uncertain," as evidenced by her settlement of $12,000. The court contrasted another case, *Metroflight, Inc. v. Shaffer*, 581 S.W.2d 704 (Tex.Civ.App.1979),[4] where the plaintiff had received 80 percent of its total claim in a settlement of an inconsistent claim, thus showing it knew the "strength and validity" of its settled claim. In *Metroflight,* wrote the Texas Supreme Court, it was right that the plaintiff should be bound by its election of remedies because it

---

**4.** In *Metroflight,* the court applied election of remedies in a formulaic fashion to deny the plaintiff recovery in a case analogous to the present one. The court considered that it was bound to follow an earlier case by the Supreme Court of Texas, *Lomas & Nettleton Co. v. Huckabee,* 558 S.W.2d 863 (Tex.1977). Said the court

in *Metroflight:* "The soundness of the rule may be doubtful, and opposing policy arguments may be persuasive, but [*Huckabee*] must be taken as resolving the matter authoritatively for the purpose of the present case." *Metroflight,* 581 S.W.2d at 710.

had made an informed election. Like the plaintiff in *Bocanegra*, Skandia, as we have pointed out above, was unable to predict the result of a trial of its claim against Omaha Indemnity on the Stop Loss Agreement. It was therefore an uncertain remedy and Skandia, in settling with Omaha Indemnity, was not making an informed choice. Since Skandia, to follow the *Bocanegra* reasoning, had not made an informed choice of remedies, it was not bound thereby.

We do not endorse the *Bocanegra* analysis, insofar as it places any weight on the plaintiff's assessment of his prospects for recovery on the settled claim, as evidenced by the portion of his total claim which he received in settlement. On that point, we agree with the concurring opinion, which would simply have overruled *Metroflight* and *Huckabee*. The concurring opinion said: "This decision establishes a rule of law that whether a settlement with a defendant will be deemed an election barring suit against another defendant, upon facts inconsistent with those asserted to obtain the settlement, will be ultimately determined by this court's opinion as to the degree of uncertainty as to the facts inconsistently asserted." *Bocanegra*, 605 S.W.2d at 854 (concurring opinion). Either the majority opinion or the concurring opinion, however, would support Skandia's position in this case.

Judgment reversed and cause remanded for further proceedings.

All concur.