HORIZON OFFSHORE CONTRAC-
TORS, INC. and Horizon Ves-
sels, Inc., Appellants,

v.

AON RISK SERVICES OF TEXAS,
INC., Appellee.

No. 14–07–00549–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

March 12, 2009.

Daryl G. Dursum, Bradley Allen Waters, Houston, for appellants.

Christina Espinosa Rodriguez, Stephen G. Tipps, Houston, for appellee.

Panel consists of Justices FROST, SEYMORE, and GUZMAN.

## OPINION

KEM THOMPSON FROST, Justice.

This is an appeal from a summary judgment in favor of an insurance broker who was sued by a marine contractor asserting claims for breach of contract, negligence, negligent misrepresentation, and breach of fiduciary duty. In its summary-judgment motion, the broker asserted it did not owe the contractor a fiduciary duty as a matter of law; however, the broker did not challenge the elements of the contractor's other three claims. Instead, the broker asserted two affirmative defenses. The broker argued the other claims are barred by the election-of-remedies doctrine because the contractor's claims in this suit are based on the invalidity of an insurance policy, whereas, previously the contractor successfully maintained a claim in English litigation based on the assertion that the insurance policy was valid. The broker also asserted that, under the doctrine of judicial estoppel, the contractor's claims are barred because they are dependent upon various assertions contrary to the contractor's sworn statements in the English litigation. We conclude that the trial court correctly granted summary judgment regarding the breach-of-fiduciary-duty claim because the summary-judgment evidence conclusively proves the broker did not owe the contractor a fiduciary duty. As to the remaining claims, we reverse and remand because the broker did not conclusively prove entitlement to summary judgment based on election of remedies or judicial estoppel.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellants Horizon Offshore Contractors, Inc. and Horizon Vessels, Inc. (collectively referred to hereinafter as "Horizon") provide offshore marine construction services to the oil and gas industry. Appellee Aon Risk Services of Texas, Inc. ("Aon") served as Horizon's insurance broker and, in 2004, entered into an agreement with Horizon regarding Aon's services for a one-year period beginning February 20, 2004 and running through February 19, 2005 (hereinafter the "Agreement"). Under the Agreement, Horizon paid Aon a base fee of $400,000, and Aon agreed to perform a variety of services, including the following:

- develop and recommend to Horizon insurance, risk financing, and other loss funding programs, techniques, and methods reasonably expected to benefit Horizon,
- develop underwriting information, structure proposals, and secure, when reasonably available, insurance and risk management policies as desired by Horizon with markets financially acceptable to Horizon, providing, in Horizon's sole opinion, the optimum balance of coverage, cost, and service,
- at Horizon's discretion, place insurance coverage and review and advise Horizon with respect to program contracts (including policies, binders, certificates, and other documents related to the program) in accordance with Horizon's requirements,
- compare and contrast available policy forms and recommend appropriate

changes consistent with Horizon's business,

- provide complete claims handing review, including without limit, monitoring, auditing, and settling advice, as requested by Horizon,
- use Aon's best efforts to procure the recommended insurance coverages upon the best available terms and price and with underwriters acceptable to Horizon,
- adhere at all times to a professional standard, as determined by the statutory and common law, good business practices, and the custom and practice of dealing in the insurance industry.

The parties agreed that, in addition to the base fee of $400,000, Aon would receive all of the commissions on the placement of builder's risk, towing, and cargo insurance policies. In the Agreement, Aon and Horizon chose Texas law and agreed that all claims arising out of or relating to the Agreement shall be resolved in Houston, Texas.

During the term of the Agreement, on March 1, 2004, Horizon entered into a contract with the Israeli Electric Corporation to use the L/B GULF HORIZON and the L/B CANYON HORIZON to construct a sub-sea pipeline in Israel (hereinafter the "IEC Project"). This project required the two barges to be towed from Sabine Pass, Texas, to Ashod, Israel. Aon solicited quotes from two potential groups of underwriters, one led by Wellington and the other by Beazley Underwriting, Ltd. (the second group of underwriters hereinafter collectively referred to as "Beazley"). Beazley provided $28 million in coverage for the tow of the L/B GULF HORIZON, with no deductible (hereinafter the "Policy"). Under the Policy, English law applies, and all claims regarding the insurance coverage are required to be resolved in England.

While the L/B GULF HORIZON was in tow off the coast of North Carolina, a fire started in the barge in an area in which no work was being performed by the barge crew. The crew could not extinguish the fire and abandoned ship. The towline was dropped, and the crew evacuated. Horizon notified Beazley. Beazley issued a reservation-of-rights letter and later instituted a declination proceeding in England seeking a judicial determination that there was no coverage for the casualty. Horizon filed suit against Beazley in state court in Harris County, Texas, alleging breach of contract, negligence, and bad faith. However, based on the English forum-selection clause, the English court enjoined Horizon from continuing with its Texas lawsuit and from commencing or continuing any suit arising out of the occurrence in question in any jurisdiction other than England. In accordance with this injunction, Horizon dismissed its Texas suit and asserted claims against Beazley as a counterclaim in the English lawsuit, in which Aon was not a party. Horizon filed suit against Aon in the trial court below while the English suit was pending. In July 2006, Horizon settled its claims against Beazley in the English suit.

In its original petition against Aon, Horizon asserted claims for breach of contract, negligence, and negligent misrepresentation. Aon filed a traditional motion for summary judgment, in which it did not assert any ground challenging the merits of these claims; rather, Aon asserted the affirmative defenses of election of remedies and judicial estoppel. Horizon amended its petition to add a claim for breach of fiduciary duty. Aon filed a supplemental motion for summary judgment asserting that, as a matter of law, it owed Horizon no fiduciary duty. The trial court granted both Aon's original and supplemental motions for summary judgment

and rendered a final, take-nothing summary judgment in Aon's favor as to all of Horizon's claims.

## II. SUMMARY JUDGMENT ISSUES AND STANDARD OF REVIEW

In a single issue, Horizon complains the trial court erred in granting Aon's motion for summary judgment and supplemental motion for summary judgment because Aon failed to conclusively prove all elements of its election-of-remedies and judicial-estoppel defenses and failed to negate fiduciary duty as a matter of law. In a traditional motion for summary judgment, if the movant's motion and summary-judgment evidence facially establish its right to judgment as a matter of law, the burden shifts to the nonmovant to raise a genuine, material fact issue sufficient to defeat summary judgment. *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex.2000). In our de novo review of a trial court's summary judgment, we consider all the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex.2006). The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary-judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex.2007). When, as in this case, the order granting summary judgment does not specify the grounds on which the trial court relied, we must affirm the summary judgment if any of the independent summary-judgment grounds is meritorious. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000).

## III. ANALYSIS

### A. Did Aon owe Horizon a fiduciary duty based on an alleged principal-agent relationship?

■ In its supplemental summary-judgment motion, Aon asserted that, as a matter of law, it does not owe Horizon a fiduciary duty. On appeal, Horizon asserts that Aon owes Horizon a fiduciary duty because, under the Agreement, Aon is Horizon's agent. In the Agreement, the parties agree, among other things, as follows:

3.10 The parties acknowledge that, in connection with its performance of the foregoing Services, [Aon] may communicate with legal counsel for [Horizon]. The Parties [sic] understand and agree that [Aon] undertakes such communication on [Horizon's] behalf. [Aon] agrees to keep such communications confidential. The Parties [sic] understand and agree that all such communications shall be subject to the attorney-client privilege, and/or any other privilege, to the full extent of the law. The parties further acknowledge that, in connection with the performance of the foregoing Services, [Aon] may share with [Horizon's] insurance carriers, as necessary, certain confidential communications with legal counsel, except those communications that pertain to insurance coverage or reservation of rights, which communications [Aon] agrees to keep confidential. The Parties [sic] understand and agree that [Aon] undertakes such communications with [Horizon's] insurance carriers on [Horizon's] behalf. The Parties [sic] understand and agree that all such communications shall be subject to the attorney-client

privilege, and/or any other privilege, to the full extent of the law.privilege, and/or any other privilege, to the full extent of the law.privilege, and/or any other privilege, to the full extent of the law.

. . .

## XIV. RELATIONSHIP OF PARTIES:

Except with respect to its confidential communications with [Horizon's] legal counsel and/or [Horizon's] insurance carriers, nothing contained in this Agreement shall constitute [Aon] as the agent or legal representative of [Horizon]. [Aon] shall have no right or power to bind or obligate [Horizon] in any manner whatsoever, nor represent that it has the power or right to do so.

. . .

## XIX. MISCELLANEOUS PROVISIONS:

19.1 This Agreement constitutes the entire agreement between the Parties concerning this subject matter, and supersedes all prior agreements, promises, correspondence, discussions, representations and understandings, written or verbal.

Under the unambiguous language of the Agreement, Aon and Horizon agree that Aon is not the agent or legal representative of Horizon except with respect to Aon's confidential communications with Horizon's legal counsel or Horizon's insurance carriers. Apparently in an attempt to preserve attorney-client and other privileges covering communications with Horizon's legal counsel, the parties agree in section 3.10 of the Agreement that Aon will act as Horizon's agent when Aon communicates with Horizon's legal counsel and that Aon will keep these communications confidential. In the second paragraph of section 3.10, the parties agree that Aon will act as Horizon's agent when Aon shares with Horizon's insurance carriers confidential communications with Horizon's legal counsel. Other than these references in section 3.10, there is no other mention in the Agreement of confidential communications with Horizon's legal counsel or insurance carriers. We conclude that the confidential communications with Horizon's legal counsel and Horizon's insurance carriers mentioned in section 14 are the confidential communications with Horizon's legal counsel and Horizon's insurance carriers referred to in section 3.10.

Under the plain meaning of the contract between Aon and Horizon, Aon is not Horizon's agent except when Aon communicates with Horizon's legal counsel or passes on these communications with counsel to Horizon's insurance carriers. However, relative to the alleged acts or omissions at issue in this case, Horizon's claims are not based on any such communications. Therefore, we conclude that Aon was not acting as Horizon's agent under the unambiguous language of the Agreement.[1] *See*

---

1. The cases Horizon cites are not on point. *See Duzich v. Marine Office of Am. Corp.*, 980 S.W.2d 857, 865 (Tex.App.-Corpus Christi 1998, pet. denied) (stating that insurer denied that broker was its agent but provided no evidence in support of this assertion, that insurance brokers are generally considered agents of the insured, and that fact issues existed as to whether insurer was estopped from denying that broker was its agent); *Robles v. Consol. Graphics, Inc.*, 965 S.W.2d 552, 557 (Tex.App.-Houston [14th Dist.] 1997, no pet.) (holding that party was an agent under the plain terms of his contracts);

*Rauscher Pierce Refsnes, Inc. v. Great Sw. Sav., F.A.*, 923 S.W.2d 112, 116 (Tex.App.-Houston [14th Dist.] 1996, no writ) (holding that agreements established agency relationship); *Stephanz v. Laird*, 846 S.W.2d 895, 901–02 (Tex.App.-Houston [1st Dist.] 1993, writ denied) (holding there was no evidence to support the existence of any alleged fiduciary duty); *West v. Touchstone*, 620 S.W.2d 687, 690 (Tex.Civ.App.-Dallas 1981, writ ref'd n.r.e.) (holding there was fact issue as to whether agency relationship existed based on

*Environmental Procedures, Inc. v. Guidry,* 282 S.W.3d 602, 626–29, 2009 WL 237063, at *16–18 (Tex.App.-Houston [14th Dist.] 2009, no pet. h.) (holding that broker owed no fiduciary duty to client as a matter of law); *Ramco Oil & Gas Ltd. v. Anglo–Dutch (Tenge) L.L.C.,* 207 S.W.3d 801, 827 (Tex.App.-Houston [14th Dist.] 2006, pet. denied) (concluding that, under unambiguous contract language, no fiduciary duty arose based on a formal relationship). Horizon's appellate argument regarding Aon's alleged fiduciary duty lacks merit. Accordingly, we affirm the trial court's summary judgment relative to Horizon's claim for breach of fiduciary duty.

## B. Does the summary-judgment evidence conclusively prove Horizon's affirmative defense of election of remedies?

### *Law Regarding Election of Remedies*

 The Supreme Court of Texas has observed that (1) the contours of the election-of-remedies defense are often elusive and (2) this defense is often confused with the one-satisfaction rule, judicial estoppel, equitable estoppel, ratification, or waiver. *See Bocanegra v. Aetna Life Ins. Co.,* 605 S.W.2d 848, 850 (Tex.1980). Our high court also has observed that legal scholars have criticized the election-of-remedies defense and called for its abolition. The *Bocanegra* court noted that commentators have described this defense as "a legal weed that judicial gardeners should root out," "a legal delusion," "an anachronism," "a problem child of the law," and "a remedy that has no independent viability." *See id.* at 850, n. 2. Though the Supreme Court of Texas has not yielded to these calls for abolition of the election-of-remedies doctrine, the high court has concluded that this defense is not favored and should not be extended. *See Fina Supply, Inc. v. Abilene Nat. Bank,* 726 S.W.2d 537, 541 (Tex.1987); *Am. Sav. & Loan Ass'n of Houston v. Musick,* 531 S.W.2d 581, 588 (Tex.1975). The election-of-remedies defense bars relief when (1) a party successfully exercises an informed choice (2) between two or more remedies, rights, or states of facts (3) which are so inconsistent as to (4) constitute manifest injustice. *See Bocanegra,* 605 S.W.2d at 851.

 The Supreme Court of Texas has made it clear that the election-of-remedies doctrine may be successfully invoked only in limited circumstances. Not all inconsistent positions are barred by the election-of-remedies defense. For example, under Texas Rule of Civil Procedure 48, entitled "Alternative Claims for Relief," a party may assert inconsistent facts or remedies simultaneously against different defendants, settle with one defendant, and still recover judgment against the other defendant even though the facts or remedies alleged against the second defendant are inconsistent with the facts or remedies alleged against the settling defendant.[2] *See*

---

affiant's testifying to alleged oral agreement to serve as agent).

2. The *Bocanegra* court expressly states this principle, and Aon agrees that it is a correct statement of Texas law. *See Bocanegra,* 605 S.W.2d at 851–52; *Plate & Platter, Inc.,* 780 S.W.2d at 456–57. Though we are bound to apply the election-of-remedies defense as announciated by the Supreme Court of Texas, we note that it seems to unfairly penalize (1) parties, such as Horizon, who happen to have agreed to mandatory forum-selection clauses requiring that defendants be sued in different forums, and (2) parties who happen to be unable to obtain personal jurisdiction over all defendants in the same forum. *See generally In re Lyon Fin. Servs., Inc.,* 257 S.W.3d 228, 232 (Tex.2008) (per curiam) (holding that forum-selection clauses are generally enforceable, and a party attempting to show that such a clause should not be enforced bears a heavy burden). But for these often fortuitous

Tex.R. Civ. P. 48 (stating that "[a] party may set forth two or more statements of a claim or defense alternatively or hypothetically ... [a] party may also state as many separate claims or defenses as he has regardless of consistency and whether based upon legal or equitable grounds or both"); *Bocanegra*, 605 S.W.2d at 851–52; *Plate & Platter, Inc. v. Wolf*, 780 S.W.2d 453, 456–57 (Tex.App.-Dallas 1989, writ denied). However, if a party successfully pursues one remedy against one defendant based on one set of alleged facts and then files a subsequent action against another defendant, the election of remedies will bar the second suit if the alleged facts or remedies in that suit are sufficiently inconsistent with the alleged facts or remedy sought in the first suit. *See Bocanegra*, 605 S.W.2d at 851–52. The *Bocanegra* court explained the legal standard for determining the sufficiency of the requisite inconsistency as follows:

> [A]n election will bar recovery when the inconsistency in the assertion of a remedy, right, or state of facts is so unconscionable, dishonest, contrary to fair dealing, or so stultifies the legal process or trifles with justice or the courts as to be manifestly unjust.

*Id.* at 851. The core purpose of the election-of-remedies doctrine seems to be to prevent a party from abusing the judicial process by obtaining a recovery against one defendant by asserting one set of facts and then later suing a second defendant seeking recovery by denying the alleged facts upon which the party recovered in the first suit. *See id.* at 850; *Metroflight, Inc. v. Shaffer*, 581 S.W.2d 704, 709 (Tex. App.-Dallas 1979, writ ref'd n.r.e.). Because its purpose is different than the one-

satisfaction rule, the election-of-remedies doctrine, when it applies, bars subsequent claims even if the recovery sought in the subsequent case when added to the past recovery would not exceed the amount of the plaintiff's loss. *See Bocanegra*, 605 S.W.2d at 851–52; *Metroflight, Inc.*, 581 S.W.2d at 709.

## Aon's Summary–Judgment Ground Based on Election of Remedies

In its election-of-remedies ground in the trial court, Aon asserted that Horizon first obtained a settlement from Beazley by advancing one view of the facts—that Horizon had made all necessary disclosures and that the Policy was valid and payable. Aon asserts that, in its claims against Aon in this case, Horizon alleges that Aon "created a defense that allowed Beazley to escape payment on the [Policy]." Aon asserts that, in the English litigation, Horizon alleged facts indicating that the Policy was valid and that Beazley was liable to pay Horizon's claim but that, in this case, Horizon alleges facts showing that the Policy was invalid and that Beazley had a valid defense to Horizon's suit on the Policy. Aon asserts that Horizon's factual allegations in this case are so inconsistent with its allegations in the prior English litigation that allowing Horizon to recover on Horizon's claims in this case would be manifestly unjust and therefore violate the election-of-remedies doctrine.

## Horizon's Allegations in this Suit

In the election-of-remedies defense that Aon asserts against Horizon's claims for breach of contract, negligence, and negligent misrepresentation (hereinafter "Claims"), Aon does not and cannot attack

events that preclude suing all defendants in the same forum, the plaintiff could have sued the defendants at the same time in the same suit, in which case the election-of-remedies doctrine would not bar seriatim settlements or recoveries based on inconsistent factual allegations. *See Bocanegra*, 605 S.W.2d at 851–52; *Plate & Platter, Inc.*, 780 S.W.2d at 456–57.

the legal theories or the evidentiary support for the Claims. Rather, Aon asserts that, even if the Claims are recognized under Texas law and even if evidence supports all of the elements of the Claims, Horizon may not recover based on the independent bar of this affirmative defense. *See Gorman v. Life Ins. Co. of N. Am.*, 811 S.W.2d 542, 546 (Tex.1991); *Heggy v. Am. Trading Employee Retirement Account Plan*, 123 S.W.3d 770, 779 (Tex. App.-Houston [14th Dist.] 2003, pet. denied). Therefore, regardless of this court's view of the merits of the Claims, in conducting the analysis, we must presume the merits of the Claims and determine whether the evidence conclusively proves that they are barred by election of remedies. Therefore, we presume for the sake of argument the truth of the following allegations from Horizon's live petition in this case:

- Horizon engaged Aon to be its exclusive insurance broker for all its insurance needs starting in December 2001. This agreement was later memorialized in the Agreement.
- Under the Agreement, Horizon paid Aon a base fee of $400,000 for the Agreement's one-year effective period. On top of this base fee, Aon was entitled to recover commissions from insurers and business entities other than Aon who made available services necessary to implement insurance and risk management policies and programs for placement of certain new coverages. Aon was also allowed to recover all of the commissions on the placement of builder's risk, tow, and cargo insurances.
- Because of an exclusion in Horizon's Hull & Machinery Policy, it needed to procure tow policies for tows of its barges for a distance of more than 1,500 nautical miles. Aon obtained tow policies for five such tows, and in all but one of these cases, it required the deletion of provisions in the tow policies that would have chosen English law and selected English courts as the forum for dispute resolution.

- In the five prior tow policies, Aon never inquired with Horizon about the type of work that would be performed on the barge during the tows.

- Aon was aware of the fact that, in late November 2003, Horizon's risk manager who had been responsible for communicating and working with Aon in the placement of various insurance coverages for Horizon, including the five tows mentioned above, resigned his employment with Horizon, leaving Horizon without an employee dedicated solely or primarily to insurance matters.

- On March 1, 2004, Horizon entered into a contract with the Israeli Electric Corporation for the IEC Project. This project required the two barges to be towed from Sabine Pass, Texas, to Israel.

- Shortly after it secured the IEC Project, Horizon contacted Aon and requested it to obtain appropriate tow insurance for these two barges and their crew for this tow. To secure a tow insurance quote, Horizon provided the same information routinely provided to Aon for similar tow insurance quotes, including vessel names, departure and destination locales, departure dates, and approximate times for tows.

- On that same day, Aon responded and requested that Horizon advise what, if anything, the "riding crew" would be doing during the voyage, a query that had not been posed by Aon to Horizon in connection with previous tows. Horizon advised, based upon the informa-

tion available to it at the time, that the crew aboard would be assigned work details and that painting and general barge maintenance would be the primary focus of their work.

- Aon knew or should have known what policy terms and conditions were best and most relevant or important to Horizon and what Horizon expected and required in the policies that covered Horizon's barges while under tow. Aon knew or should have known Horizon's operating procedures and practices regarding the towage of its barges, the risks that were being placed, the information required by various underwriters in order to insure those risks, and the proclivities of various underwriters regarding honoring or seeking to avoid paying properly presented claims.

- Aon solicited quotes from only two potential groups of underwriters, one led by Wellington and the other by Beazley. Aon represented to Horizon that Beazley's quote was "materially better" than Wellington's quote.

- Aon forwarded to Horizon the proposed terms for the Beazley policies, under which English law applied to the policies and English courts were the exclusive forum for dispute resolution but did not explain the significance of the English choice of law provision (hereinafter the "English Law Clause") or the forum-selection clause (hereinafter the "Forum Clause").

- Based on Aon's representations, Horizon authorized Aon to bind the tow coverage with Beazley, and Aon ultimately placed the coverage for the two tows with Beazley.

- Horizon always fully cooperated with Aon and provided the information requested by Aon. Aon never requested additional information or otherwise followed up with Horizon regarding Aon's March 17, 2004 query of what, if anything, the crew would be doing during the tow. Even though Horizon told Aon the number of the crew aboard the L/B GULF HORIZON, Aon did not pass this information on to Beazley.

- Aon, through its employee Marjorie Goodall, who was in charge of Horizon's account during the term of the Agreement, has freely admitted that, at that time, she had no understanding of the differences between English and United States law when it came to making disclosures to insurers. She did not know or understand that the disclosure requirements might be harsher under English law. This was a critical deficiency, as Aon and its London counterpart were the only parties that communicated directly with the underwriters.

- Through Aon's negligence and breach of duty, the English Law Clause and the Forum Clause (hereinafter collectively the "Clauses") became a part of the tow policies. Goodall was asked by her London agent, Mark Fagg, whether the Clauses should be a part of the Policy. Goodall, without knowing the ramifications of this choice or consulting with Horizon on this issue, agreed to allow the Clauses to be part of the Policy. She did not bring the Clauses to Horizon's attention, and she did not review the Policy to see if the Clauses had been deleted. She did not check to see if there was any extra cost involved to delete the Clauses.

- The Cover Note for the Policy was issued by Beazley on May 6, 2004, and stated that it was "issued and signed by [Beazley's] duly authorized officer,

attorney or agent at Houston, Texas." The Policy provided $28 million in coverage for the tow of the L/B GULF HORIZON with no deductible for a total loss. Beazley also provided $30 million in coverage for the tow of the L/B CANYON HORIZON.

- The total premium on the insurance for both tows was $935,000, of which $560,000 was for the round-trip tow of the L/B GULF HORIZON and $375,000 was for the one-way tow of the L/B CANYON HORIZON. Horizon timely paid the full premium. Aon deducted a 17.5% commission under the Agreement ($163,625).

- While the L/B GULF HORIZON was in tow off of the coast of North Carolina, a fire started in the barge in an area in which no work was being performed by the barge crew. The crew could not extinguish the fire and abandoned ship. The towline was dropped, and the crew safely evacuated.

- Horizon notified Aon of the loss immediately, and Aon notified Beazley. A few days later, Beazley issued a reservation-of-rights letter incorrectly alleging that Horizon was preventing Beazley's representatives from interviewing the crew and questioning whether the number of workers aboard the L/B GULF HORIZON and the work that they were performing was consistent with the information that Aon had presented to Beazley. Beazley also cancelled coverage for the L/B CANYON HORIZON, which was about to set sail for Israel. This forced Horizon to immediately procure replacement coverage that was $384,375 more expensive than the insurance that Beazley had provided. Aon received an 18% commission on this replacement policy.

- Three months after the casualty, Beazley filed a declination proceeding against Horizon in England seeking a judicial determination that there was no coverage under the Policy for the casualty based on Horizon's alleged misrepresentations and failure to sufficiently disclose the work to be performed during the tow, as required under English law. Aon was not a party in the English lawsuit.

- About one month later, Horizon filed suit against Beazley in Harris County district court. However, because of the Clauses and threats of civil and criminal sanctions by the English court, Horizon was forced to dismiss this action and assert these claims as a counterclaim in the English lawsuit at substantial expense, even though Horizon desired to litigate its claims in Texas.

- In July 2006, Horizon settled its claims with Beazley in the English suit for $14.3 million, approximately half of the $28 million policy limits that should have been available under the Policy. Horizon incurred approximately $6 million defending the declination proceeding in England. The settlement of the English case was for an amount that was "but an insignificant fraction of the damages which Horizon would have been entitled to seek in a Texas court." Prior to settling the English lawsuit with Beazley, Horizon timely filed this suit against Aon.

Horizon asserts 24 acts that allegedly constitute breach of contract, negligence, or negligent misrepresentation, including the following:

(1) Aon's failure to see to it that the Clauses were deleted from the Policy, as had been done on four of the prior towing insurance policies,

(2) Aon's failure to review and advise Horizon regarding the Clauses,

(3) Aon's allowing the Clauses to become part of the Policy without consulting Horizon,

(4) Aon's failure to procure insurance on the best available terms,

(5) Aon's failure to ensure that Beazley understood the risk it was insuring,

(6) Aon's failure to ensure that Beazley had all the information it needed or required, particularly in light of the Clauses, to forestall Beazley's attempts to deny or avoid coverage of a covered peril based on Horizon's alleged failure to disclose all material facts,

(7) Aon's failure to explain to Horizon the ramifications of any requests by Beazley for information,

(8) Aon's failure to act as a prudent broker by supplying information to Beazley that it did not request and that lead to the denial of Horizon's claim,

(9) Aon's failure to convey to Horizon information about Beazley's claims-paying history and reputation,

(10) Aon's failure to realize that the quote from Beazley created an unreasonable risk, based on the Clauses, or, if it realized the existence of this risk, Aon's failure to advise Horizon about this risk,

(11) Aon's representation that the Beazley quote was "materially better" and its recommendation that Horizon accept the Beazley quote despite the fact that it contained the Clauses,

(12) Aon's allowing the Clauses to be in the Policy, not advising Horizon as to the impact it would have on the level of disclosure necessary to avoid coverage issues with Beazley,

and not assisting Horizon to ensure a disclosure that Beazley would see as complete, through which acts and omissions, Aon effectively created a defense that allowed Beazley to (a) escape what should have been payment of the full $28 million policy limits available to Horizon under the Policy within three to four months after the fire and (b) instead pay only $14.3 million three years after the fire and only after Horizon had expended $6 million in fees and expenses,

(13) Aon's failure to guide Horizon as to how detailed the disclosures to Beazley needed to be under English law and failing to advise Horizon as to what Beazley would see as sufficient disclosures,

(14) Aon's failure to work with Horizon to educate Horizon on what Beazley would consider adequate and to ensure that Beazley was provided all the information it would consider material, and

(15) Aon's failure to help Horizon present the risk of the tow in question to Beazley in order for Beazley to fully pay Horizon's claim under the Policy.

In its negligent-misrepresentation claim, Horizon also alleges that Aon falsely represented to Horizon that Beazley is a "leading marine and tow underwriter" and that Horizon's quote for the Policy was "materially better" than the only other quote Aon received.

As a result of Aon's alleged breaches, Horizon claims the following damages:

(1) $13.7 million in remaining insurance that it allegedly should have recovered under the Policy for the constructive total loss of the L/B GULF HORIZON,

(2) in the alternative, if the casualty did not result in a constructive total loss, $8.7 million in remaining insurance coverage for the difference in fair market value of the barge less salvage value, not to exceed cost of repairs,

(3) approximately $6 million in attorney's fees to defend Horizon in the English lawsuit,

(4) approximately $324,375 in extra premium to procure replacement tow insurance coverage for the tow of the L/B CANYON HORIZON,

(5) return of unearned premiums and commissions,

(6) "sue and labor expenses" in connection with the L/B GULF HORIZON,

(7) expenses for retention of expert witnesses to inspect the L/B GULF HORIZON,

(8) expenses incurred in the English lawsuit,

(9) reasonable and necessary attorney's fees under Chapter 38 of the Texas Civil Practice and Remedies Code, and

(10) prejudgment and postjudgment interest and court costs.

Presuming the merits of these claims, we now must compare them to the allegations in the English litigation.

*Comparison of Horizon's Allegations in this Suit with its Allegations in the English Lawsuit*

Though the underlying facts and Horizon's factual allegations against Aon in this case are complicated, Aon's inconsistent-position argument is straightforward. Aon asserts that, in this case, Horizon seeks to recover against Aon based on allegations that there was no coverage under the Policy and that the Policy was invalid due to the failure to make all required disclosures. Aon asserts that these purported factual allegations are inconsistent with Horizon's allegations in the English suit that there was coverage under the Policy and that the Policy was valid because all required disclosures were made.

After scrutinizing the allegations in Horizon's live petition, we disagree with Aon's characterization of the factual basis for Horizon's Claims. Although there are many ancillary and alternative allegations in Horizon's petition, the main allegations are that (1) Aon engaged in actionable conduct resulting in the Clauses being included in the Policy, causing damage to Horizon because the amount Horizon could recover under the Policy in English courts under English law was less than the amount that Horizon could recover under the Policy in Texas courts under Texas law, and (2) Aon engaged in actionable conduct resulting in Horizon settling its claims against Beazley under the Policy in English courts under English law for less than Horizon would have settled these claims if Aon had not engaged in the actionable conduct. Horizon is not alleging that there was no coverage under the Policy, that the Policy was invalid due to the failure to make all required disclosures, or that Aon failed to provide Horizon with insurance coverage.[3]

---

3. In addition to citing the allegations in Horizon's live petition, Aon also cites excerpts from the deposition in this case of Horizon's corporate representative. Presuming that it is proper to consider these excerpts in reviewing the factual allegations on which the Claims are based, these excerpts do not change the analysis. Some excerpts are substantially similar to allegations in Horizon's petition. Aon cites testimony by Horizon's corporate representative that (1) "[Aon] should have told [Beazley] about the number of crew," (2) "[Aon] didn't give any thought at all to disclosures necessary [sic]," (3) "I think

■■ There well may be weaknesses in one or more of Horizon's liability theories, the damages sought under the Claims, and the evidence to support the allegations upon which the Claims are based. However, any such problems are not before this court. Our review is strictly limited to the grounds on which the trial court granted summary judgment. This court may affirm the trial court's summary judgment based only on a ground expressly stated in Aon's motions. *See Stiles v. Resolution Trust Corp.*, 867 S.W.2d 24, 26 (Tex.1993). As to the Claims, Aon expressly stated only two grounds in its motions for traditional summary judgment—(1) election of remedies and (2) judicial estoppel. Neither of these two grounds involve an attack on the legal or factual basis for the Claims. In analyzing the affirmative defense of election of remedies, this court does not inquire into these matters. *See Gorman*, 811 S.W.2d at 546; *Bocanegra*, 605 S.W.2d at 850–52; *Heggy*, 123 S.W.3d at 779. After reviewing Horizon's allegations in this case, we conclude that the remedies, rights, and facts Horizon alleges in this case are not inconsistent with the remedies, rights, and facts Horizon alleged in the English suit. In addition, to the extent there is any inconsistency, it is not so unconscionable, dishonest, contrary to fair dealing, or so stultifying to the legal process or trifling with justice as to be manifestly unjust. *See Musick*, 531 S.W.2d at 588–89 (holding that election of remedies did not apply because filing a trespass to try title action by the mortgagee/trustee-deed grantee was not inconsistent with its successful settlement of claim against the title insurer); *Custom Leasing, Inc. v. Texas Bank & Trust Co. of Dallas*, 491 S.W.2d 869, 871–72 (Tex.1973) (holding that election of remedies did not apply because finance company's obtaining final judgment on contract claims against individual who signed contracts himself and also allegedly forged execution of company on the contracts was not inconsistent with suing the bank that was the first victim of the forger and then allegedly made false representations to finance company so that it would refinance the forger's debt with the bank); *Liberty Mut. Ins. Co. v. First Nat'l Bank of Dallas*, 151 Tex. 12, 245 S.W.2d 237, 241–43 (1951) (holding that election of remedies did not apply because it was not inconsistent for company whose dishonest employee cashed company checks made payable to fictitious payees to recover under an insurance policy and then sue the bank that allegedly wrongfully honored the checks); *Heath v. Herron*, 732 S.W.2d 748, 750 (Tex.App.-Houston [14th Dist.] 1987, writ denied) (holding that election of remedies did not apply because legal-malpractice plaintiff's allegations in the underlying partnership dispute were consistent with his allegations in his malpractice action against his litigation attorney in the underlying case). We may not extend the election-of-remedies doctrine

it is incumbent on [Aon] to provide any additional—if [Aon] had additional facts, to give it to the underwriters. Or if [Aon] need[ed] additional facts, to come back to [Horizon] and as[k] for clarification," (4) "[Aon] didn't come back and say . . . what do you mean by general barge maintenance? [Aon] didn't ask [Horizon] . . . to expand on any of that," (5) because Beazley's lead underwrite did not have any experience with this type of barge, "[Aon] should have offered more information or told [Horizon] that [the lead underwriter] was not an expert in this field," and (6) "I'm saying that there was a substantial risk that because of the representations or lack thereof made by Aon as our broker, Lloyd's had something to hang their hat on." These statements do not show that Horizon is alleging that there was no coverage under the Policy, that the Policy was invalid due to the failure to make all required disclosures, or that Aon failed to provide Horizon with insurance coverage.

beyond its stated boundaries. Any inconsistency in the stances taken or the relief sought in the two suits will not support application of the election-of-remedies doctrine.

Horizon is contractually obligated to assert the Claims against Aon in Harris County, Texas. If Horizon's allegations are true, Beazley would be subject to personal jurisdiction in Texas for claims regarding the Policy, and Horizon desired to assert all of its claims in Texas. However, Horizon alleges that, due to the allegedly actionable conduct of Aon, Horizon could not sue Beazley in Texas but was forced to assert its claims against Beazley in English courts. Therefore, but for Aon's allegedly actionable conduct, Horizon could have asserted its claims against Beazley and Aon simultaneously in Texas, in which case, the cases show, and Aon admits, that the doctrine of election of remedies would not apply. The fact that Aon's ability to assert election of remedies purportedly results from Aon's actionable conduct is yet another reason why it is not manifestly unjust to allow Horizon to assert the Claims. *See Bocanegra*, 605 S.W.2d at 851–52.

### Aon's Misplaced Reliance on Huckabee and Metroflight Cases

In the trial court and on appeal, Aon has relied heavily on two cases it claims are on point regarding its election-of-remedies defense: *Lomas & Nettleton Co. v. Huckabee*, 558 S.W.2d 863, 864–65 (Tex.1977) (per curiam) and *Metroflight, Inc. v. Shaffer*, 581 S.W.2d 704, 707–10 (Tex.App.-Dallas 1979, writ ref'd n.r.e.). Neither case is on point.

In *Huckabee*, two homeowners had a deed of trust on their property which required them to insure the property and pay the premiums through an escrow agent. *See Huckabee v. Lomas & Nettleton Co.*, 550 S.W.2d 371, 372 (Tex.Civ.App.-Waco 1977), *rev'd*, 558 S.W.2d 863, 864 (Tex.1977) (stating that the court of appeals opinion contains a more complete statement of the facts). When the landowners had their homeowners' insurance cancelled, they obtained a replacement policy covering the house and their belongings therein. *See id.* However, when the escrow agent received the replacement policy from the insurance agent, the escrow agent refused to accept or pay the premium on the policy, even though there were sufficient funds in the escrow account to pay for the premium. *See id.* Instead, the escrow agent returned the first policy to the insurance agent that had issued it and purchased a second policy from a different insurer that covered only the house. *See id.* After a fire damaged the house and the homeowners' belongings, the homeowners sued both insurers seeking insurance coverage for damages to both the home and its contents. *See id.* The first insurer asserted that there was no coverage because the escrow agent had refused to accept the policy and had returned it. *See id.* The plaintiffs settled their claims with the two insurance companies, receiving all of the damages sought as to the house and 80% of the damages sought as to the belongings *See id.*

After settling with the insurers, the homeowners sued the escrow agent alleging that the agent wrongfully refused to accept the first policy and seeking damages based on the loss of their belongings in the fire. *See id.* The escrow agent filed a motion for summary judgment asserting that the homeowners had recovered a large portion of their loss by settling with the insurers and that election-of-remedies thus barred the claims against the escrow agent. *See id.* The escrow agent asserted that the homeowners' claims against the first insurer were based on their allegation that the first policy was

valid and in effect; whereas, their claims against the escrow agent were based on an allegation that the first policy was invalid and not in effect due to the escrow agent's rejection of the policy. *See id.* at 372–73. The court of appeals concluded that the homeowners' position in their claims against the escrow agent was repugnant and inconsistent with the position they successfully asserted against the first insurer. *See id.* at 373. Nonetheless, the court of appeals reversed the trial court's summary judgment because it concluded that the claims in question were distinct and asserted against different persons arising out of independent transactions. *See id.* at 372–73.

The Supreme Court of Texas reversed in a per curiam opinion. *See Huckabee,* 558 S.W.2d at 864–65. In *Huckabee,* the high court agreed with the intermediate court's determination that the homeowners' position in their claims against the escrow agent was repugnant and inconsistent with the position they successfully asserted against the first insurer. *See id.* at 864. In doing so the Supreme Court of Texas reaffirmed its prior decisions in *Musick* and *Custom Leasing,* in which the high court stated that "the bar of an election does not apply to the assertion of distinct causes of action against different persons arising out of independent transactions with such parties." *See id.* at 865 (quoting *Custom Leasing, Inc.,* 491 S.W.2d at 871); *see also Musick,* 531 S.W.2d at 588. The *Huckabee* court stated that, in determining whether claims are barred by election of remedies, it is appropriate to consider whether the legal theories advanced and the defendants were different. *See Huckabee,* 558 S.W.2d at 865. The high court agreed with its prior holdings in *Musick* and *Custom Leasing* that the positions advanced in those cases were not inconsistent or repugnant. *See id.* However, the *Huckabee* court disagreed with

the lower court's conclusion that the inconsistent claims arose out of independent transactions. *See id.* Therefore, because the claims were sufficiently inconsistent and the other elements of the defense were satisfied, the high court held that the claims against the escrow agent were barred by election of remedies as a matter of law. *See id.*

Both courts in *Huckabee* held that the homeowners' claims against the escrow agent were based on the allegation that the agent acted wrongfully by refusing to accept the first policy and returning it, which would mean that there was no insurance coverage under the first policy. The courts held that these allegations were so inconsistent with the prior allegation of coverage under the first policy as to be repugnant to justice and sufficient to support what are now the third and fourth elements of the election-of-remedies defense. *See Huckabee,* 558 S.W.2d at 864; *Huckabee,* 550 S.W.2d at 373. Aon asserts that this case is on point because Horizon claimed coverage under the Policy in the English lawsuit and claims there is no coverage under the Policy in this suit. However, as discussed above, we conclude Horizon is not expressly or impliedly alleging that the Policy is invalid or that there is no coverage under the Policy. Therefore, the Supreme Court's opinion in *Huckabee* is not on point.

Likewise, in *Metroflight,* an airline sued its insurer asserting that an insurance policy provided coverage for losses sustained in an airplane crash. *See Metroflight, Inc.,* 581 S.W.2d at 705. The insurer asserted that there was no coverage based on an exclusion in the policy. The insurer eventually settled the lawsuit and agreed to pay 80 percent of all claims against the airline as a result of the crash. *See id.* at 706. The airline then sued its insurance agent alleging that the agent had failed to obtain coverage. *See id.* at 707. Though

it expressed reservations about the election-of-remedies defense, the *Metroflight* court concluded that it was bound to follow the Supreme Court's opinion in *Huckabee*.[4] *See id.* at 707–08. Again, because Horizon does not expressly or impliedly allege that the Policy was invalid or that there was no coverage under the Policy, *Metroflight* is not on point.

For the reasons stated above, we conclude that the remedies, rights, and facts Horizon alleges in this case are not inconsistent with the remedies, rights, and facts Horizon alleged in the English suit. In addition, to the extent there is any inconsistency, it is not so unconscionable, dishonest, contrary to fair dealing, or so stultifying to the legal process or trifling with justice as to be manifestly unjust. Therefore, the trial court erred to the extent it granted summary judgment dismissing the Claims based on Aon's election-of-remedies defense.

**C. Does the summary-judgment evidence conclusively prove that Horizon's claims are barred by judicial estoppel?**

■ If the doctrine of judicial estoppel applies, a party who has made a sworn statement in a prior proceeding is barred from maintaining a contrary position in a subsequent proceeding. *See Brown v. Lanier Worldwide, Inc.*, 124 S.W.3d 883, 898 (Tex.App.-Houston [14th Dist.] 2004, no pet.). In its motion for summary judgment, Aon asserted that, as a matter of law, Horizon is judicially estopped from contradicting various statements. Aon further argued that, because the Claims cannot be maintained unless these prior statements can be contradicted, the Claims fail as a matter of law. We examine the statements on which Aon relies to see if they provide a basis for judicial estoppel.

■ Aon cites deposition testimony by Horizon's corporate representative in this lawsuit. Though this testimony is sworn, it is not in a prior proceeding. Therefore, the judicial-estoppel doctrine cannot apply to these statements themselves. *See Long v. Knox*, 155 Tex. 581, 291 S.W.2d 292, 295 (1956); *Steffan v. Steffan*, 29 S.W.3d 627, 631–32 (Tex.App.-Houston [14th Dist.] 2000, pet. denied). In addition, this deposition testimony does not prove up any sworn statement by Horizon in the English lawsuit.

---

4. The *Metroflight* court noted that the election-of-remedies doctrine seems contrary to the public policy of encouraging settlement. *See Metroflight, Inc.*, 581 S.W.2d at 708. The election-of-remedies defense does not apply to seriatim settlements based on inconsistent factual allegations that were simultaneously made against defendants in the same case. *See* Tex.R. Civ. P. 48; *Bocanegra*, 605 S.W.2d at 851–52; *Plate & Platter, Inc.*, 780 S.W.2d at 456–57. If, for various reasons that may be beyond the plaintiff's control, a plaintiff cannot sue two defendants in the same forum, then it still may avoid the election-of-remedies defense by settling both suits at the same time. If the defendant in one suit is willing to settle but the defendant in the other suit to which the election-of-remedies doctrine otherwise would apply is unwilling to settle at that time, then the election-of-remedies defense encourages the plaintiff not to settle the first suit until the second suit is ready to settle; otherwise the settlement of the first suit would bar any recovery in the second suit. In *Bocanegra*, Justice Campbell noted in his concurring opinion that the election-of-remedies doctrine is contrary to the public policy in favor of settlement, and he asserted that the court should overrule *Huckabee*. *See Bocanegra*, 605 S.W.2d at 854–55 (Campbell, J., concurring); *see also Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 60 & n. 3 (Tex.2008) (stating that settlements are highly favored because they avoid the uncertainties regarding the outcome of litigation and the often exorbitant amounts of time and money to prosecute or defend claims at trial, citing Justice Campbell's concurring opinion in *Bocanegra* for a similar proposition).

Aon also relies on sworn statements made by Horizon's expert Paul Hunt in the English lawsuit. Although an expert witness may be hired by one party to testify on that party's behalf, rarely will an expert agree to be under the party's control with respect to his testimony. *See McCluskey v. Randall's Food Markets, Inc.*, No. 14–03–01087–CV, 2004 WL 2340278, at *4 (Tex.App.-Houston [14th Dist.] Oct. 19, 2004, pet. denied) (mem.op.). Therefore, the testimony of an expert witness does not, ipso facto, bind the party who retained the witness, although in some circumstances it may if the witness is also an agent or employee of the party that hired him. *See id.* Hunt's statement shows that he worked for his own company and that he was not an agent or employee of Horizon. Consequently, Hunt's sworn statement was not a sworn statement by Horizon. *See id* at *4–5. Therefore, Hunt's sworn statements in the English lawsuit may not be used as the basis for judicial estoppel because they are not sworn statements by Horizon. *See Long*, 291 S.W.2d at 295; *Brown*, 124 S.W.3d at 898; *Miles v. Plumbing Servs. of Houston, Inc.*, 668 S.W.2d 509, 512 (Tex.App.-Houston [14th Dist.] 1984, writ ref'd n.r.e.).

Aon also relies on a sworn statement of Michelle Anne Morgan. However, the record reflects that Morgan was not an employee of Horizon and did not make her sworn statement on behalf of Horizon.[5] Therefore, Morgan's statement is not a statement by Horizon and may not be used as the basis for judicial estoppel. *See Long*, 291 S.W.2d at 295; *Brown*, 124 S.W.3d at 898; *Miles*, 668 S.W.2d at 512.

Aon additionally relies on Horizon's "Opening Submissions" in the English lawsuit. This document, however, is not sworn and therefore may not be used as the basis for judicial estoppel. *See Spera v. Fleming, Hovenkamp & Grayson, P.C.*, 25 S.W.3d 863, 871–72 (Tex.App.-Houston [14th Dist.] 2000, no pet.).

Likewise, Aon may not rely on the sworn statement of David Agatha, which was submitted in the English lawsuit. Agatha is an employee of Horizon. Agatha drafted a description of the work the riding crew on the barges would be doing while the barges were being towed; this description was passed on to Aon and then to Beazley. Aon relies on Agatha's sworn statement that "I believe that the answer I gave to Mr. Brown's email [containing the description in question] was a fair and accurate presentation of the activities the riding crew would be undertaking." However, Horizon is not alleging in this suit that it believes its description of the work the riding crew would be doing while the barges were being towed was not a fair and accurate presentation of the activities the riding crew would be undertaking. Therefore, this prior sworn statement is not inconsistent with Horizon's position in this case and is not a proper basis for judicial estoppel. *See Long*, 291 S.W.2d at 295; *Brown*, 124 S.W.3d at 898; *Miles*, 668 S.W.2d at 512.

Because none of the statements upon which Aon relies as a basis for judicial estoppel satisfy the requirements for judicial estoppel, the trial court erred to the extent it granted summary judgment dismissing the Claims based on judicial estoppel.

## IV. CONCLUSION

As to the alleged acts or omissions at issue in this case, Aon was not acting as Horizon's agent under the unambiguous language of the Agreement and thus owed no fiduciary duty. Accordingly, we affirm

5. Counsel for Aon confirmed this fact at oral argument.

the trial court's summary judgment to the extent the trial court dismissed Horizon's claim for breach of fiduciary duty. The only summary-judgment grounds Aon asserted against the remaining claims were election of remedies and judicial estoppel. Because the remedies, rights, and facts Horizon alleges in this case are not inconsistent with the remedies, rights, and facts Horizon alleged in the English suit and because any such inconsistency would not be so unconscionable, dishonest, contrary to fair dealing, or so stultifying to the legal process or trifling with justice as to be manifestly unjust, the trial court erred in granting summary judgment based on the election-of-remedies doctrine. Because none of the statements upon which Aon relies as a basis for judicial estoppel satisfy the requirements for judicial estoppel, the trial court erred to the extent it granted summary judgment dismissing the Claims based on judicial estoppel. Accordingly, we reverse, sever, and remand that portion of the trial court's judgment that dismisses Horizon's claims for breach of contract, negligence, and negligent misrepresentation.