Affirmed in Part, Reversed and Remanded in Part, and Opinion filed March
12, 2009








Affirmed in
Part, Reversed and Remanded in Part, and Opinion filed March 12, 2009.

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00549-CV

____________

 

HORIZON OFFSHORE CONTRACTORS, INC.
AND HORIZON VESSELS, INC., Appellants

 

V.

 

AON RISK SERVICES OF TEXAS, INC., Appellee

 



 

On Appeal from the 55th
District Court

Harris County, Texas

Trial Court Cause No. 2006-10853

 



 

O P I N I O N








This is an appeal from a summary judgment in favor of an
insurance broker who was sued by a marine contractor asserting claims for
breach of contract, negligence, negligent misrepresentation, and breach of
fiduciary duty.  In its summary-judgment motion, the broker asserted it did not
owe the contractor a fiduciary duty as a matter of law; however, the broker did
not challenge the elements of the contractor=s other three
claims.  Instead, the broker asserted two affirmative defenses.  The broker
argued the other claims are barred by the election-of-remedies doctrine because
the contractor=s claims in this suit are based on the invalidity of
an insurance policy, whereas, previously the contractor successfully maintained
a claim in English litigation based on the assertion that the insurance policy
was valid.  The broker also asserted that, under the doctrine of judicial
estoppel, the contractor=s claims are barred because they are
dependent upon various assertions contrary to the contractor=s sworn statements
in the English litigation.  We conclude that the trial court correctly granted
summary judgment regarding the breach-of-fiduciary-duty claim because the
summary-judgment evidence conclusively proves the broker did not owe the
contractor a fiduciary duty.  As to the remaining claims, we reverse and remand
because the broker did not conclusively prove entitlement to summary judgment
based on election of remedies or judicial estoppel.  

I.  Factual and Procedural Background

Appellants Horizon Offshore Contractors, Inc. and Horizon
Vessels, Inc. (collectively referred to hereinafter as AHorizon@) provide offshore
marine construction services to the oil and gas industry.  Appellee Aon Risk
Services of Texas, Inc. (AAon@) served as
Horizon=s insurance broker
and, in 2004, entered into an agreement with Horizon regarding Aon=s services for a
one-year period beginning February 20, 2004 and running through February 19,
2005 (hereinafter the AAgreement@).  Under the
Agreement, Horizon paid Aon a base fee of $400,000, and Aon agreed to perform a
variety of services, including the following:

!       develop and recommend to Horizon insurance,
risk financing, and other loss funding programs, techniques, and methods
reasonably expected to benefit Horizon,

!       develop underwriting information, structure
proposals, and secure, when reasonably available, insurance and risk management
policies as desired by Horizon with markets financially acceptable to Horizon,
providing, in Horizon=s sole opinion, the optimum balance
of coverage, cost, and service,

!       at Horizon=s discretion, place insurance coverage and review and
advise Horizon with respect to program contracts (including policies, binders,
certificates, and other documents related to the program) in accordance with
Horizon=s requirements,








!       compare and contrast available policy forms
and recommend appropriate changes consistent with Horizon=s business,

!       provide complete claims handing review,
including without limit, monitoring, auditing, and settling advice, as
requested by Horizon,

!       use Aon=s best efforts to procure the recommended insurance
coverages upon the best available terms and price and with underwriters
acceptable to Horizon,

!       adhere at all times to a professional
standard, as determined by the statutory and common law, good business
practices, and the custom and practice of dealing in the insurance industry.

The
parties agreed that, in addition to the base fee of $400,000, Aon would receive
all of the commissions on the placement of builder=s risk, towing,
and cargo insurance policies.  In the Agreement, Aon and Horizon chose Texas
law and agreed that all claims arising out of or relating to the Agreement
shall be resolved in Houston, Texas.  

During
the term of the Agreement, on March 1, 2004, Horizon entered into a contract
with the Israeli Electric Corporation to use the L/B GULF HORIZON and the L/B
CANYON HORIZON to construct a sub-sea pipeline in Israel (hereinafter the AIEC Project@). This project required the two
barges to be towed from Sabine Pass, Texas, to Ashod, Israel.  Aon solicited
quotes from two  potential groups of underwriters, one led by Wellington and
the other by Beazley Underwriting, Ltd. (the second group of underwriters
hereinafter collectively referred to as ABeazley@).  Beazley provided $28 million in
coverage for the tow of the L/B GULF HORIZON, with no deductible (hereinafter
the APolicy@).  Under the Policy, English law applies,
and all claims regarding the insurance coverage are required to be resolved in
England.  








While
the L/B GULF HORIZON was in tow off the coast of North Carolina, a fire started
in the barge in an area in which no work was being performed by the barge
crew.  The crew could not extinguish the fire and abandoned ship.  The towline
was dropped, and the crew evacuated.  Horizon notified Beazley.  Beazley
issued a reservation-of-rights letter and later instituted a declination
proceeding in England seeking a judicial determination that there was no
coverage for the casualty.  Horizon filed suit against Beazley in state court in Harris County,
Texas, alleging breach of contract, negligence, and bad faith.  However, based
on the English forum-selection clause, the English court enjoined Horizon from
continuing with its Texas lawsuit and from commencing or continuing any suit
arising out of the occurrence in question in any jurisdiction other than
England.  In accordance with this injunction, Horizon dismissed its Texas suit
and asserted claims against Beazley as a counterclaim in the English lawsuit,
in which Aon was not a party.  Horizon filed suit against Aon in the trial court
below while the English suit was pending.  In July 2006, Horizon settled its claims against Beazley in
the English suit.

In its
original petition against Aon, Horizon asserted claims for breach of
contract, negligence, and negligent misrepresentation.  Aon filed a traditional
motion for summary judgment, in which it did not assert any ground challenging
the merits of these claims; rather, Aon asserted the affirmative defenses of
election of remedies and judicial estoppel.  Horizon amended its petition to
add a claim for breach of fiduciary duty.  Aon filed a supplemental motion for
summary judgment asserting that, as a matter of law, it owed Horizon no fiduciary
duty.  The trial court granted both Aon=s original and
supplemental motions for summary judgment and rendered a final, take-nothing
summary judgment in Aon=s favor as to all of Horizon=s claims. 

            II. 
Summary Judgment Issues and Standard of
Review








In a single issue, Horizon complains the trial court erred
in granting Aon=s motion for summary judgment and
supplemental motion for summary judgment because Aon failed to conclusively
prove all elements of its election-of-remedies and judicial-estoppel defenses
and failed to negate fiduciary duty as a matter of law.  In a traditional
motion for summary judgment, if the movant=s motion and summary-judgment evidence facially establish its
right to judgment as a matter of law, the burden shifts to the nonmovant to
raise a genuine, material fact issue sufficient to defeat summary judgment.  M.D.
Anderson Hosp. & Tumor Inst. v. Willrich, 28 S.W.3d 22, 23 (Tex. 2000). In our de novo
review of a trial court=s summary judgment, we consider all the
evidence in the light most favorable to the nonmovant, crediting evidence
favorable to the nonmovant if reasonable jurors could, and disregarding
contrary evidence unless reasonable jurors could not.  Mack Trucks, Inc. v.
Tamez, 206 S.W.3d 572, 582 (Tex. 2006).  The evidence raises a genuine
issue of fact if reasonable and fair-minded jurors could differ in their
conclusions in light of all of the summary-judgment evidence.  Goodyear Tire
& Rubber Co. v. Mayes, 236 S.W.3d 754, 755 (Tex. 2007).  When, as in
this case, the order granting summary judgment does not specify the grounds on
which the trial court relied, we must affirm the summary judgment if any of the
independent summary-judgment grounds is meritorious.  FM Props. Operating
Co. v. City of Austin, 22 S.W.3d 868, 872 (Tex. 2000).

                                                    III.  Analysis

A.      Did Aon
owe Horizon a fiduciary duty based on an alleged principal-agent relationship?

In its supplemental summary-judgment motion, Aon asserted
that, as a matter of law, it does not owe Horizon a fiduciary duty.  On appeal,
Horizon asserts that Aon owes Horizon a fiduciary duty because, under the
Agreement, Aon is Horizon=s agent.  In the Agreement, the parties
agree, among other things, as follows:

3.10   The parties acknowledge that, in connection
with its performance of the foregoing Services, [Aon] may communicate with
legal counsel for [Horizon].  The Parties [sic] understand and agree that [Aon]
undertakes such communication on [Horizon=s] behalf.  [Aon] agrees to keep such communications
confidential.  The Parties [sic] understand and agree that all such
communications shall be subject to the attorney-client privilege, and/or any
other privilege, to the full extent of the law.








The parties further acknowledge that, in connection with the
performance of the foregoing Services, [Aon] may share with [Horizon=s] insurance carriers, as
necessary, certain confidential communications with legal counsel, except those
communications that pertain to insurance coverage or reservation of rights,
which communications [Aon] agrees to keep confidential.  The Parties [sic]
understand and agree that [Aon] undertakes such communications with [Horizon=s] insurance carriers on [Horizon=s] behalf.  The Parties [sic]
understand and agree that all such communications shall be subject to the
attorney-client privilege, and/or any other privilege, to the full extent of
the law.

. . .

XIV.   RELATIONSHIP OF PARTIES:

Except with respect to its
confidential communications with [Horizon=s] legal counsel and/or [Horizon=s] insurance carriers, nothing
contained in this Agreement shall constitute [Aon] as the agent or legal
representative of [Horizon]. [Aon] shall have no right or power to bind or
obligate [Horizon] in any manner whatsoever, nor represent that it has the
power or right to do so.

. . .

XIX.   MISCELLANEOUS PROVISIONS:

19.1   This
Agreement constitutes the entire agreement between the Parties concerning this
subject matter, and supersedes all prior agreements, promises, correspondence,
discussions, representations and understandings, written or verbal.

Under the unambiguous language of the Agreement, Aon and
Horizon agree that Aon is not the agent or legal representative of Horizon except
with respect to Aon=s confidential communications with Horizon=s legal counsel or
Horizon=s insurance
carriers.  Apparently in an attempt to preserve attorney-client and other
privileges covering communications with Horizon=s legal counsel,
the parties agree in section 3.10 of the Agreement that Aon will act as Horizon=s agent when Aon
communicates with Horizon=s legal counsel and that Aon will keep
these communications confidential.  In the second paragraph of section 3.10,
the parties agree that Aon will act as Horizon=s agent when Aon
shares with Horizon=s insurance carriers confidential
communications with Horizon=s legal counsel.  Other than these
references in section 3.10, there is no other mention in the Agreement of
confidential communications with Horizon=s legal counsel or
insurance carriers.  We conclude that the confidential communications with
Horizon=s legal counsel
and Horizon=s insurance carriers mentioned in section 14 are the
confidential communications with Horizon=s legal counsel
and Horizon=s insurance carriers referred to in section 3.10. 








Under the plain meaning of the contract between Aon and
Horizon, Aon is not Horizon=s agent except when Aon communicates with
Horizon=s legal counsel or
passes on these communications with counsel to Horizon=s insurance
carriers.  However, relative to the alleged acts or omissions at issue in this
case, Horizon=s claims are not based on any such communications. 
Therefore, we conclude that  Aon was not acting as Horizon=s agent under the
unambiguous language of the Agreement.[1] 
See Environmental Procedures, Inc. v. Guidry, No. 14-05-01090-CV, CS.W.3dC,C, 2009 WL 237063,
at *16B18 (Tex. App.CHouston [14th
Dist.] Feb. 3, 2009, no pet. h.) (holding that broker owed no fiduciary duty to
client as a matter of law); Ramco Oil & Gas Ltd. v. Anglo-Dutch (Tenge)
L.L.C., 207 S.W.3d 801, 827 (Tex. App.CHouston [14th
Dist.] 2006, pet. denied) (concluding that, under unambiguous contract
language, no fiduciary duty arose based on a formal relationship).  Horizon=s appellate
argument regarding Aon=s alleged fiduciary duty lacks merit. 
Accordingly, we affirm the trial court=s  summary
judgment  relative to Horizon=s claim for breach of fiduciary duty.

B.      Does the summary-judgment evidence
conclusively prove Horizon=s affirmative
defense of election of remedies?

Law Regarding Election of Remedies













The Supreme Court of Texas has observed that (1) the
contours of the election-of-remedies defense are often elusive and (2) this
defense is often confused with the one-satisfaction rule, judicial estoppel,
equitable estoppel, ratification, or waiver.  See Bocanegra v. Aetna Life
Ins. Co., 605 S.W.2d 848, 850 (Tex. 1980).  Our high court also has
observed that legal scholars have criticized the election-of-remedies defense
and called for its abolition. The Bocanegra court noted that commentators have described this
defense as Aa legal weed that judicial gardeners should root out,@ Aa legal delusion,@ Aan anachronism,@ Aa problem child of the law,@ and Aa remedy that has no independent
viability.@  See id. at 850, n.2.  Though the Supreme Court of Texas has not yielded to
these calls for abolition of the election-of-remedies doctrine, the high court
has concluded that this defense is not favored and should not be extended.  See
Fina Supply, Inc. v. Abilene Nat. Bank, 726 S.W.2d 537, 541 (Tex. 1987); Am.
Sav. & Loan Ass=n of Houston v.
Musick, 531 S.W.2d 581, 588 (Tex. 1975).  The election-of-remedies defense
bars relief when (1) a party successfully exercises an informed choice (2)
between two or more remedies, rights, or states of facts (3) which are so
inconsistent as to (4) constitute manifest injustice.  See Bocanegra,
605 S.W.2d at 851.       The Supreme Court of Texas had made it clear that the
election-of-remedies doctrine may be successfully invoked only in limited
circumstances.  Not all inconsistent positions are barred by the election-of-remedies
defense.  For example, under Texas Rule of Civil Procedure 48, entitled AAlternative Claims
for Relief,@ a party may assert inconsistent facts or remedies
simultaneously against different defendants, settle with one defendant, and
still recover judgment against the other defendant even though the facts or
remedies alleged against the second defendant are inconsistent with the facts
or remedies alleged against the settling defendant.[2] 
See Tex. R. Civ. P. 48
(stating that A[a] party may set forth two or more statements of a
claim or defense alternatively or hypothetically . . . [a] party may also state
as many separate claims or defenses as he has regardless of consistency and
whether based upon legal or equitable grounds or both@); Bocanegra,
605 S.W.2d at 851B52; Plate & Platter, Inc. v. Wolf,
780 S.W.2d 453, 456B57 (Tex. App.CDallas 1989, writ
denied).  However, if a party successfully pursues one remedy against one
defendant based on one set of alleged facts and then files a subsequent action
against another defendant, the election of remedies will bar the second suit if
the alleged facts or remedies in that suit are sufficiently inconsistent with
the alleged facts or remedy sought in the first suit.  See Bocanegra,
605 S.W.2d at 851B52.  The Bocanegra court explained
the legal standard for determining the sufficiency of the requisite
inconsistency as follows:

[A]n election will bar recovery when the inconsistency in the assertion
of a remedy, right, or state of facts is so unconscionable, dishonest, contrary
to fair dealing, or so stultifies the legal process or trifles with justice or
the courts as to be manifestly unjust.

Id. at 851.  The
core purpose of the election-of-remedies doctrine seems to be to prevent a
party from abusing the judicial process by obtaining a recovery against one defendant
by asserting one set of facts and then later suing a second defendant seeking
recovery by denying the alleged facts upon which the party recovered in the
first suit.  See id. at 850; Metroflight, Inc. v. Shaffer, 581
S.W.2d 704, 709 (Tex. App.CDallas 1979, writ ref=d n.r.e.). Because
its purpose is different than the one-satisfaction rule, the
election-of-remedies doctrine, when it applies, bars subsequent claims even if
the recovery sought in the subsequent case when added to the past recovery
would not exceed the amount of the plaintiff=s loss.  See
Bocanegra, 605 S.W.2d at 851B52;  Metroflight,
Inc., 581 S.W.2d at 709.   








          Aon=s Summary-Judgment
Ground Based on Election of Remedies

In its election-of-remedies ground in the trial court, Aon
asserted that Horizon first obtained a settlement from Beazley by advancing one
view of the factsCthat Horizon had made all necessary
disclosures and that the Policy was valid and payable.  Aon asserts that, in
its claims against Aon in this case, Horizon alleges that Aon Acreated a defense
that allowed Beazley to escape payment on the [Policy].@  Aon asserts
that, in the English litigation, Horizon alleged facts indicating that the
Policy was valid and that Beazley was liable to pay Horizon=s claim but that,
in this case, Horizon alleges facts showing that the Policy was invalid and
that Beazley had a valid defense to Horizon=s suit on the
Policy.  Aon asserts that Horizon=s factual
allegations in this case are so inconsistent with its allegations in the prior
English litigation that allowing Horizon to recover on Horizon=s claims in this
case would be manifestly unjust and therefore violate the election-of-remedies
doctrine.  

Horizon=s Allegations in
this Suit

In the election-of-remedies defense that Aon asserts
against Horizon=s claims for breach of contract,
negligence, and negligent misrepresentation (hereinafter AClaims@), Aon does not
and cannot attack the legal theories or the evidentiary support for the
Claims.  Rather, Aon asserts that, even if the Claims are recognized under
Texas law and even if evidence supports all of the elements of the Claims,
Horizon may not recover based on the independent bar of this affirmative defense. 
See Gorman v. Life Ins. Co. of N. Am., 811 S.W.2d 542, 546 (Tex. 1991); Heggy
v. Am. Trading Employee Retirement Account Plan, 123 S.W.3d 770, 779 (Tex.
App.CHouston [14th
Dist.] 2003, pet. denied).  Therefore, regardless of this court=s view of the
merits of the Claims, in conducting the analysis, we must presume the merits of
the Claims and determine whether the evidence conclusively proves that they are
barred by election of remedies.  Therefore, we presume for the sake of argument
the truth of the following allegations from Horizon=s live petition in
this case:








!       Horizon engaged Aon to be its exclusive
insurance broker for all its insurance needs starting in December 2001.  This
agreement was later memorialized in the Agreement.

!       Under the Agreement, Horizon paid Aon a base
fee of $400,000 for the Agreement=s one-year effective period.  On top of this base fee, Aon
was entitled to recover commissions from insurers and business entities other
than Aon who made available services necessary to implement insurance and risk
management policies and programs for placement of certain new coverages.  Aon
was also allowed to recover all of the commissions on the placement of builder=s risk, tow, and cargo insurances. 


!       Because of an exclusion in Horizon=s Hull & Machinery Policy, it
needed to procure tow policies for tows of its barges for a distance of more
than 1,500 nautical miles.  Aon obtained tow policies for five such tows, and
in all but one of these cases, it required the deletion of provisions in the
tow policies that would have chosen English law and selected English courts as
the forum for dispute resolution. 

!       In the five prior tow policies, Aon never
inquired with Horizon about the type of work that would be performed on the
barge during the tows.

!       Aon was aware of the fact that, in late
November 2003, Horizon=s risk manager who had been
responsible for communicating and working with Aon in the placement of various
insurance coverages for Horizon, including the five tows mentioned above,
resigned his employment with Horizon, leaving Horizon without an employee
dedicated solely or primarily to insurance matters.

!       On March 1, 2004, Horizon entered into a
contract with the Israeli Electric Corporation for the IEC Project.  This
project required the two barges to be towed from Sabine Pass, Texas, to Israel.


!       Shortly after it secured the IEC Project,
Horizon contacted Aon and requested it to obtain appropriate tow insurance for
these two barges and their crew for this tow.  To secure a tow insurance quote,
Horizon provided the same information routinely provided to Aon for similar tow
insurance quotes, including vessel names, departure and destination locales,
departure dates, and approximate times for tows.  








!       On that same day, Aon responded and requested
that Horizon advise what, if anything, the Ariding crew@ would be doing during the voyage, a query that had not been posed by
Aon to Horizon in connection with previous tows. Horizon advised, based upon
the information available to it at the time, that the crew aboard would be
assigned work details and that painting and general barge maintenance would be
the primary focus of their work.  

!       Aon knew or should have known what policy
terms and conditions were best and most relevant or important to Horizon and
what Horizon expected and required in the policies that covered Horizon=s barges while under tow.  Aon knew
or should have known Horizon=s operating procedures and practices regarding the towage of its
barges, the risks  that were being placed, the information required by various
underwriters in order to insure those risks, and the proclivities of various
underwriters regarding honoring or seeking to avoid paying properly presented
claims.  

!       Aon solicited quotes from only two potential
groups of underwriters, one led by Wellington and the other by Beazley. Aon
represented to Horizon that Beazley=s quote was Amaterially better@ than Wellington=s quote.  

!       Aon forwarded to Horizon the proposed terms
for the Beazley policies, under which English law applied to the policies and
English courts were the exclusive forum for dispute resolution but did not
explain the significance of the English choice of law provision (hereinafter
the AEnglish Law Clause@) or the forum-selection clause
(hereinafter the AForum Clause@).  

!       Based on Aon=s representations, Horizon authorized Aon to bind
the tow coverage with Beazley, and Aon ultimately placed the coverage for the
two tows with Beazley.   

!       Horizon always fully cooperated with Aon and
provided the information requested by Aon. Aon never requested additional
information or otherwise followed up with Horizon regarding Aon=s March 17, 2004 query of what, if
anything, the crew would be doing during the tow.  Even though Horizon told Aon
the number of the crew aboard the L/B GULF HORIZON, Aon did not pass this
information on to Beazley.

!       Aon, through its employee Marjorie Goodall,
who was in charge of Horizon=s account during the term of the Agreement, has freely admitted that,
at that time, she had no understanding of the differences between English and
United States law when it came to making disclosures to insurers.  She did not
know or understand that the disclosure requirements might be harsher under
English law.  This was a critical deficiency, as Aon and its London counterpart
were the only parties that communicated directly with the underwriters. 








!       Through Aon=s negligence and breach of duty, the English Law
Clause and the Forum Clause (hereinafter collectively the AClauses@) became a part of the tow
policies.  Goodall was asked by her London agent, Mark Fagg, whether the
Clauses should be a part of the Policy.  Goodall, without knowing the
ramifications of this choice or consulting with Horizon on this issue, agreed
to allow the Clauses to be part of the Policy.  She did not bring the Clauses
to Horizon=s attention, and she did not review
the Policy to see if the Clauses had been deleted.  She did not check to see if
there was any extra cost involved to delete the Clauses.    

!       The Cover Note for the Policy was issued by
Beazley on May 6, 2004, and stated that it was Aissued and signed by [Beazley=s] duly authorized officer,
attorney or agent at Houston, Texas.@ The Policy provided $28 million in coverage for the tow of
the L/B GULF HORIZON with no deductible for a total loss. Beazley also provided
$30 million in coverage for the tow of the L/B CANYON HORIZON.  

!       The total premium on the insurance for both
tows was $935,000, of which $560,000 was for the round-trip tow of the L/B GULF
HORIZON and $375,000 was for the one-way tow of the L/B CANYON HORIZON. 
Horizon timely paid the full premium.  Aon deducted a 17.5% commission under
the Agreement ($163,625).

!       While the L/B GULF HORIZON was in tow off of
the coast of North Carolina, a fire started in the barge in an area in which no
work was being performed by the barge crew.  The crew could not extinguish the
fire and abandoned ship.  The towline was dropped, and the crew safely
evacuated.

!       Horizon notified Aon of the loss immediately,
and Aon notified Beazley.  A few days later, Beazley issued a
reservation-of-rights letter incorrectly alleging that Horizon was preventing
Beazley=s representatives from interviewing
the crew and questioning whether the number of workers aboard the L/B GULF
HORIZON and the work that they were performing was consistent with the
information that Aon had presented to Beazley. Beazley also cancelled coverage
for the L/B CANYON HORIZON, which was about to set sail for Israel.  This
forced Horizon to immediately procure replacement coverage that was $384,375
more expensive than the insurance that Beazley had provided.  Aon received an
18% commission on this replacement policy.








!       Three months after the casualty, Beazley
filed a declination proceeding against Horizon in England seeking a judicial
determination that there was no coverage under the Policy for the casualty
based on Horizon=s alleged misrepresentations and
failure to sufficiently disclose the work to be performed during the tow, as
required under English law.  Aon was not a party in the English lawsuit.

!       About one month later, Horizon filed suit
against Beazley in Harris County district court.  However, because of the
Clauses and threats of civil and criminal sanctions by the English court,
Horizon was forced to dismiss this action and assert these claims as a
counterclaim in the English lawsuit at substantial expense, even though Horizon
desired to litigate its claims in Texas.  

!       In July 2006, Horizon settled its claims with
Beazley in the English suit for $14.3 million, approximately half of the $28
million policy limits that should have been available under the Policy. Horizon
incurred approximately $6 million defending the declination proceeding in
England.  The settlement of the English case was for an amount that was Abut an insignificant fraction of
the damages which Horizon would have been entitled to seek in a Texas court.@ Prior to settling the English
lawsuit with Beazley, Horizon timely filed this suit against Aon.

Horizon asserts 24 acts that allegedly constitute breach of
contract, negligence, or negligent misrepresentation, including the following: 

(1)     Aon=s failure to see to it that the Clauses were deleted from
the Policy, as had been done on four of the prior towing insurance policies, 

(2)     Aon=s failure to review and advise Horizon regarding the
Clauses, 

(3)     Aon=s allowing the Clauses to become part of the Policy without
consulting Horizon,

(4)     Aon=s failure to procure insurance on the best available terms,

(5)     Aon=s failure to ensure that Beazley understood the risk it was
insuring, 

(6)     Aon=s failure to ensure that Beazley had all the information it
needed or required, particularly in light of the Clauses, to forestall Beazley=s attempts to deny or avoid
coverage of a covered peril based on Horizon=s alleged failure  to disclose all material facts,

(7)     Aon=s failure to explain to Horizon the ramifications of any
requests by Beazley for information, 








(8)     Aon=s failure to act a prudent broker
by supplying information to Beazley that it did not request and that lead to
the denial of Horizon=s claim,           

(9)     Aon=s failure to convey to Horizon information about Beazley=s claims-paying history and
reputation, 

(10)    Aon=s failure to realize that the quote from Beazley created an
unreasonable risk, based on the Clauses, or, if it realized the existence of
this risk, Aon=s failure to advise Horizon about
this risk,    

(11)    Aon=s representation that the Beazley quote was Amaterially better@ and its recommendation that
Horizon accept the Beazley quote despite the fact that it contained the
Clauses, 

(12)    Aon=s allowing the Clauses to be in the Policy, not advising
Horizon as to the impact it would have on the level of disclosure necessary to
avoid coverage issues with Beazley, and not assisting Horizon to ensure a
disclosure that Beazley would see as complete, through which acts and
omissions, Aon effectively created a defense that allowed Beazley to (a) escape
what should have been payment of the full $28 million policy limits available to
Horizon under the Policy within three to four months after the fire and (b)
instead pay only $14.3 million three years after the fire and only after
Horizon had expended $6 million in fees and expenses, 

(13)    Aon=s failure to guide Horizon as to how detailed the
disclosures to Beazley needed to be under English law and failing to advise
Horizon as to what Beazley would see as sufficient disclosures, 

(14)    Aon=s failure to work with Horizon to educate Horizon on what
Beazley would consider adequate and to ensure that Beazley was provided all the
information it would consider material, and 

(15)    Aon=s failure to help Horizon present the risk of the tow in
question to Beazley in order for Beazley to fully pay Horizon=s claim under the Policy.

In its
negligent-misrepresentation claim, Horizon also alleges that Aon falsely
represented to Horizon that Beazley is a Aleading marine and tow underwriter@ and that Horizon=s quote for the Policy was Amaterially better@ than the only other quote Aon
received.  








As a result of Aon=s alleged breaches, Horizon claims
the following damages:

(1)     $13.7 million in remaining insurance that it
allegedly should have recovered under the Policy for the constructive total
loss of the L/B GULF HORIZON, 

(2)     in the alternative, if the
casualty did not result in a constructive total loss, $8.7 million in remaining
insurance coverage for the difference in fair market value of the barge less
salvage value, not to exceed cost of repairs,    

(3)     approximately $6 million in attorney=s fees to defend Horizon in the
English lawsuit, 

(4)     approximately $324,375 in extra premium to
procure replacement tow insurance coverage for the tow of the L/B CANYON
HORIZON, 

(5)     return of unearned premiums and commissions,


(6)     Asue and labor expenses@ in connection with the L/B GULF HORIZON, 

(7)     expenses for retention of expert witnesses
to inspect the L/B GULF HORIZON,  

(8)     expenses incurred in the English lawsuit, 

(9)     reasonable and necessary attorney=s fees under Chapter 38 of the
Texas Civil Practice and Remedies Code, and 

(10)    prejudgment
and postjudgment interest and court costs.

Presuming the merits of these claims, we now must compare
them to the allegations in the English litigation.

Comparison of
Horizon=s Allegations in
this Suit with its Allegations in the English Lawsuit








Though the underlying facts and Horizon=s factual
allegations against Aon in this case are complicated, Aon=s
inconsistent-position argument is straightforward.  Aon asserts that, in this
case, Horizon seeks to recover against Aon based on allegations that there was
no coverage under the Policy and that the Policy was invalid due to the failure
to make all required disclosures.  Aon asserts that these purported factual
allegations are inconsistent with Horizon=s allegations in
the English suit that there was coverage under the Policy and that the Policy
was valid because all required disclosures were made.  

After scrutinizing the allegations in Horizon=s live petition,
we disagree with Aon=s characterization of the factual basis
for Horizon=s Claims.  Although there are many ancillary and
alternative allegations in Horizon=s petition, the
main allegations are that (1) Aon engaged in actionable conduct resulting in
the Clauses being included in the Policy, causing damage to Horizon because the
amount Horizon could recover under the Policy in English courts under English
law was less than the amount that Horizon could recover under the Policy in
Texas courts under Texas law, and (2) Aon engaged in actionable conduct
resulting in Horizon settling its claims against Beazley under the Policy in
English courts under English law for less than Horizon would have settled these
claims if Aon had not engaged in the actionable conduct.  Horizon is not
alleging that there was no coverage under the Policy, that the Policy was
invalid due to the failure to make all required disclosures, or that Aon failed
to provide Horizon with insurance coverage.[3]













There well may be weaknesses in one or more of Horizon=s liability
theories, the damages sought under the Claims, and the evidence to support the
allegations upon which the Claims are based.  However, any such problems are
not before this court.  Our review is strictly limited to the grounds on which
the trial court granted summary judgment.  This court may  affirm the trial
court=s summary judgment
based only on a ground expressly stated in Aon=s motions.  See
Stiles v. Resolution Trust Corp., 867 S.W.2d 24, 26 (Tex. 1993).  As to the
Claims, Aon expressly stated only two grounds in its motions for traditional
summary judgmentC(1) election of remedies and (2) judicial
estoppel.  Neither of these two grounds involve an attack on the legal or
factual basis for the Claims.  In analyzing the affirmative defense of election
of remedies, this court does not inquire into these matters.  See Gorman,
811 S.W.2d at 546; Bocanegra, 605 S.W.2d at 850B52; Heggy,
123 S.W.3d at 779.  After reviewing Horizon=s allegations in
this case, we conclude that the remedies, rights, and facts Horizon alleges in
this case are not inconsistent with the remedies, rights, and facts Horizon
alleged in the English suit.  In addition, to the extent there is any
inconsistency, it is not so unconscionable, dishonest, contrary to fair
dealing, or so stultifying to the legal process or trifling with justice as to
be manifestly unjust. See Musick, 531 S.W.2d at 588B89 (holding that
election of remedies did not apply because filing a trespass to try title
action by the mortgagee/trustee-deed grantee was not inconsistent with its
successful settlement of claim against the title insurer); Custom Leasing,
Inc. v. Texas Bank & Trust Co. of Dallas, 491 S.W.2d 869, 871B72 (Tex. 1973)
(holding that election of remedies did not apply because finance company=s obtaining final
judgment on contract claims against individual who signed contracts himself and
also allegedly forged execution of company on the contracts was not
inconsistent with suing the bank that was the first victim of the forger and
then allegedly made false representations to finance company so that it would
refinance the forger=s debt with the bank); Liberty Mut.
Ins. Co. v. First Nat=l Bank of Dallas, 245 S.W.2d 237,
241B43 (Tex. 1951) (holding
that election of remedies did not apply because it was not inconsistent for
company whose dishonest employee who cashed company checks made payable to
fictitious payees to recover under an insurance policy and then sue the bank
that allegedly wrongfully honored the checks); Heath v. Herron, 732
S.W.2d 748, 750 (Tex. App.CHouston [14th Dist.] 1987, writ denied)
(holding that election of remedies did not apply because legal-malpractice
plaintiff=s allegations in the underlying partnership dispute
were consistent with his allegations in his malpractice action against his
litigation attorney in the underlying case).  We may not extend the
election-of-remedies doctrine beyond its stated boundaries.  Any inconsistency
in the stances taken or the relief sought in the two suits will not support
application of the election-of-remedies doctrine.

Horizon is contractually obligated to assert the Claims
against Aon in Harris County, Texas.  If Horizon=s allegations are
true, Beazley would be subject to personal jurisdiction in Texas for claims
regarding the Policy, and Horizon desired to assert all of its claims in
Texas.  However, Horizon alleges that, due to the allegedly actionable conduct
of Aon, Horizon could not sue Beazley in Texas but was forced to assert its
claims against Beazley in English courts.  Therefore, but for Aon=s allegedly
actionable conduct, Horizon could have asserted its claims against Beazley and
Aon simultaneously in Texas, in which case, the cases show, and Aon admits,
that the doctrine of election of remedies would not apply.  The fact that Aon=s ability to
assert election of remedies purportedly results from Aon=s actionable
conduct is yet another reason why it is not manifestly unjust to allow Horizon
to assert the Claims.  See Bocanegra, 605 S.W.2d at 851B52.  

Aon=s Misplaced
Reliance on Huckabee and Metroflight Cases

In the trial court and on appeal, Aon has relied heavily on
two cases it claims are on point regarding its election-of-remedies defense:
Lomas & Nettleton Co. v. Huckabee, 558 S.W.2d 863, 864B65 (Tex. 1977)
(per curiam) and Metroflight, Inc. v. Shaffer, 581 S.W.2d 704, 707B10 (Tex. App.CDallas 1979, writ
ref=d n.r.e.). 
Neither case is on point.  








In Huckabee, two homeowners had a deed of trust on
their property which required them to insure the property and pay the premiums
through an escrow agent.  See Huckabee v. Lomas & Nettleton Co.,
550 S.W.2d 371, 372 (Tex. Civ. App.CWaco 1977), rev=d, 558 S.W.2d 863,
864 (Tex. 1977) (stating that the court of appeals opinion contains a more
complete statement of the facts).   When the landowners had their homeowners= insurance
cancelled, they obtained a replacement policy covering the house and their
belongings therein.  See id.  However, when the escrow agent received
the replacement policy from the insurance agent, the escrow agent refused to
accept or pay the premium on the policy, even though there were sufficient
funds in the escrow account to pay for the premium.  See id.  Instead,
the escrow agent returned the first policy to the insurance agent that had
issued it and purchased a second policy from a different insurer that covered
only the house.  See id.  After a fire damaged the house and the
homeowners= belongings, the homeowners sued both insurers seeking
insurance coverage for damages to both the home and its contents.  See id. 
The first insurer asserted that there was no coverage because the escrow agent
had refused to accept the policy and had returned it.  See id.  The
plaintiffs settled their claims with the two insurance companies, receiving all
of the damages sought as to the house and 80% of the  damages sought as to the
belongings  See id.  








After settling with the insurers, the homeowners sued the
escrow agent alleging that the agent wrongfully refused to accept the first
policy and seeking damages based on the loss of their belongings in the fire.  See
id.   The escrow agent filed a motion for summary judgment asserting that
the homeowners had recovered a large portion of their loss by settling with the
insurers and that election-of-remedies thus barred the claims against the
escrow agent.  See id.  The escrow agent asserted that the homeowners= claims against
the first insurer were based on their allegation that the first policy was
valid and in effect; whereas, their claims against the escrow agent were based
on an allegation that the first policy was invalid and not in effect due to the
escrow agent=s rejection of the policy.  See id.  at 372B73.  The court of
appeals concluded that the homeowners= position in their
claims against the escrow agent was repugnant and inconsistent with the
position they successfully asserted against the first insurer.  See id.
at 373.  Nonetheless, the court of appeals reversed the trial court=s summary judgment
because it concluded that the claims in question were distinct and asserted
against different persons arising out of independent transactions.  See id.
at 372B73.          The
Supreme Court of Texas reversed in a per curiam opinion.  See Huckabee, 558
S.W.2d at 864B65.  In Huckabee, the high court agreed with
the intermediate court=s determination that the homeowners= position in their
claims against the escrow agent was repugnant and inconsistent with the
position they successfully asserted against the first insurer.  See id.
at 864.   In doing so the Supreme Court of Texas reaffirmed its prior decisions
in  Musick and Custom Leasing, in which the high court stated
that Athe bar of an
election does not apply to the assertion of distinct causes of action against
different persons arising out of independent transactions with such parties.@ See id. at
865 (quoting Custom Leasing, Inc., 491 S.W.2d at 871); see also
Musick, 531 S.W.2d at 588.  The Huckabee court stated that, in
determining whether claims are barred by election of remedies, it is
appropriate to consider whether the legal theories advanced and the defendants
were different.  See Huckabee, 558 S.W.2d at 865.  The high court agreed
with its prior holdings in  Musick and Custom Leasing that the
positions advanced in those cases were not inconsistent or repugnant.  See
id.  However, the Huckabee court disagreed with the lower court=s conclusion that
the inconsistent claims arose out of independent transactions.  See id. 
Therefore, because the claims were sufficiently inconsistent and the other
elements of the defense were satisfied, the high court held that the claims
against the escrow agent were barred by election of remedies as a matter of
law.  See id.   








Both courts in Huckabee held that the homeowners= claims against
the escrow agent were based on the allegation that the agent acted wrongfully
by refusing to accept the first policy and returning it, which would mean that
there was no insurance coverage under the first policy.  The courts held that
these allegations were so inconsistent with the prior allegation of coverage
under the first policy as to be repugnant to justice and sufficient to support
what are now the third and fourth elements of the election-of-remedies
defense.  See Huckabee, 558 S.W.2d at 864; Huckabee, 550
S.W.2d at 373.  Aon asserts that this case is on point because Horizon claimed
coverage under the Policy in the English lawsuit and claims there is no
coverage under the Policy in this suit.  However, as discussed above, we
conclude Horizon is not expressly or impliedly alleging that the Policy is
invalid or that there is no coverage under the Policy.  Therefore, the Supreme
Court=s opinion in Huckabee
is not on point.

Likewise, in Metroflight, an airline sued its
insurer asserting that an insurance policy provided coverage for losses
sustained in an airplane crash.  See Metroflight, Inc., 581 S.W.2d at
705.   The insurer asserted that there was no coverage based on an exclusion in
the policy.  The insurer eventually settled the lawsuit and agreed to pay 80
percent of all claims against the airline as a result of the crash.  See id.
at 706.   The airline then sued its insurance agent alleging that the agent
had failed to obtain coverage.  See id. at 707.   Though it expressed
reservations about the election-of-remedies defense, the Metroflight court
concluded that it was bound to follow the Supreme Court=s opinion in Huckabee.[4] 
See id. at 707B08.  Again, because Horizon does not
expressly or impliedly allege that the Policy was invalid or that there was no
coverage under the Policy, Metroflight is not on point.








For the reasons stated above, we conclude that the
remedies, rights, and facts Horizon alleges in this case are not inconsistent
with the remedies, rights, and facts Horizon alleged in the English suit.  In
addition, to the extent there is any inconsistency, it is not so
unconscionable, dishonest, contrary to fair dealing, or so stultifying to the
legal process or trifling with justice as to be manifestly unjust.  Therefore,
the trial court erred to the extent it granted summary judgment dismissing the
Claims based on Aon=s election-of-remedies defense.

C.      Does the summary-judgment evidence
conclusively prove that Horizon=s claims are
barred by judicial estoppel?

If the doctrine of judicial estoppel applies, a party who
has made a sworn statement in a prior proceeding is barred from maintaining a
contrary position in a subsequent proceeding. See Brown v. Lanier Worldwide,
Inc., 124 S.W.3d 883, 898 (Tex. App.CHouston [14th
Dist.] 2004, no pet.).  In its motion for summary judgment, Aon asserted that,
as a matter of law, Horizon is judicially estopped from contradicting various
statements.  Aon further argued that, because the Claims cannot be maintained
unless these prior statements can be contradicted, the Claims fail as a matter
of law.  We examine the statements on which Aon relies to see if they provide a
basis for judicial estoppel.

Aon cites deposition testimony by Horizon=s corporate
representative in this lawsuit.  Though this testimony is sworn, it is not in a
prior proceeding.  Therefore, the judicial-estoppel doctrine cannot apply to
these statements themselves.  See Long v. Knox, 291 S.W.2d 292, 295
(Tex. 1956); Steffan v. Steffan, 29 S.W.3d 627, 631B32 (Tex. App.CHouston [14th
Dist.] 2000, pet. denied).  In addition, this deposition testimony does not
prove up any sworn statement by Horizon in the English lawsuit.  








Aon also relies on sworn statements made by Horizon=s expert Paul Hunt
in the English lawsuit.  Although an expert witness may be hired by one party
to testify on that party=s behalf, rarely will an expert agree to
be under the party=s control with respect to his testimony.  See
McCluskey v. Randall=s Food Markets,
Inc.,
No. 14-03-01087-CV, 2004 WL 2340278, at *4 (Tex. App.CHouston [14th
Dist.] Oct. 19, 2004, pet. denied) (mem. op.).  Therefore, the testimony of an
expert witness does not, ipso facto, bind the party who retained the witness,
although in some circumstances it may if the witness is also an agent or
employee of the party that hired him.  See id.  Hunt=s statement shows
that he worked for his own company and that he was not an agent or employee of
Horizon.  Consequently, Hunt=s sworn statement was not a sworn
statement by Horizon.  See id at *4B5.  Therefore,
Hunt=s sworn statements
in the English lawsuit may not be used as the basis for judicial estoppel
because they are not sworn statements by Horizon.  See Long, 291 S.W.2d
at 295;  Brown, 124 S.W.3d at 898; Miles v.
Plumbing Servs. of Houston, Inc., 668 S.W.2d 509, 512 (Tex. App.CHouston [14th
Dist.] 1984, writ ref=d n.r.e.).  

Aon also relies on a sworn statement of Michelle Anne
Morgan.  However, the record reflects that Morgan was not an employee of
Horizon and did not make her sworn statement on behalf of Horizon.[5] 
Therefore, Morgan=s statement is not a statement by Horizon
and may not be used as the basis for judicial estoppel.  See Long, 291
S.W.2d at 295; Brown, 124 S.W.3d at 898; Miles, 668 S.W.2d at
512.  

Aon additionally relies on Horizon=s AOpening
Submissions@ in the English lawsuit.  This document, however, is
not sworn and therefore may not be used as the basis for judicial estoppel.  See
Spera v. Fleming, Hovenkamp & Grayson, P.C., 25 S.W.3d 863, 871B72 (Tex. App.CHouston [14th
Dist.] 2000, no pet.).  








Likewise, Aon may not rely on the sworn statement of David
Agatha, which was submitted in the English lawsuit. Agatha is an employee of
Horizon.  Agatha drafted a description of the work the riding crew on the barges
would be doing while the barges were being towed; this description was passed
on to Aon and then to Beazley.  Aon relies on Agatha=s sworn statement
that AI believe that the
answer I gave to Mr. Brown=s email [containing the description in
question] was a fair and accurate presentation of the activities the riding
crew would be undertaking.@  However, Horizon is not alleging in this
suit that it believes its description of the work the riding crew would be
doing while the barges were being towed was not a fair and accurate
presentation of the activities the riding crew would be undertaking. 
Therefore, this prior sworn statement is not inconsistent with Horizon=s position in this
case and is not a proper basis for judicial estoppel.  See Long, 291
S.W.2d at 295; Brown, 124 S.W.3d at 898; Miles, 668 S.W.2d at
512.  

Because none of the statements upon which Aon relies as a
basis for judicial estoppel satisfy the requirements for judicial estoppel, the
trial court erred to the extent it granted summary judgment dismissing the
Claims based on judicial estoppel.

                                       IV. Conclusion

As to the alleged acts or omissions at
issue in this case, Aon was not acting as Horizon=s agent under the
unambiguous language of the Agreement and thus owed no fiduciary duty. 
Accordingly, we affirm the trial court=s summary judgment
to the extent the trial court dismissed Horizon=s claim for breach
of fiduciary duty.  The only summary-judgment grounds Aon asserted against the
remaining claims were election of remedies and judicial estoppel.  Because the
remedies, rights, and facts Horizon alleges in this case are not inconsistent
with the remedies, rights, and facts Horizon alleged in the English suit and
because any such inconsistency would not be so unconscionable, dishonest,
contrary to fair dealing, or so stultifying to the legal process or trifling
with justice as to be manifestly unjust, the trial court erred in granting
summary judgment based on the election-of-remedies doctrine.  Because none of
the statements upon which Aon relies as a basis for judicial estoppel satisfy
the requirements for judicial estoppel, the trial court erred to the extent it
granted summary judgment dismissing the Claims based on judicial estoppel. 
Accordingly, we reverse, sever, and remand that portion  of the trial court=s judgment that
dismisses Horizon=s claims for breach of contract,
negligence, and negligent misrepresentation.

 

                                                                   

/s/      Kem Thompson Frost

Justice

 

Panel
consists of Justices Frost, Seymore, and Guzman.









[1]  The cases Horizon cites are not on point.  See
Duzich v. Marine Office of Am. Corp., 980 S.W.2d 857, 865 (Tex. App.CCorpus Christi 1998, pet. denied) (stating that
insurer denied that broker was its agent but provided no evidence in support of
this assertion, that insurance brokers are generally considered agents of the
insured, and that fact issues existed as to whether insurer was estopped from
denying that broker was its agent); Robles v. Consol. Graphics, Inc.,
965 S.W.2d 552, 557 (Tex. App.CHouston [14th
Dist.] 1997, no pet.) (holding that party was an agent under the plain terms of
his contracts); Rauscher Pierce Refsnes, Inc. v. Great Sw. Sav., F.A.,
923 S.W.2d 112, 116 (Tex. App.CHouston [14th
Dist.] 1996, no writ) (holding that agreements established agency
relationship); Stephanz v. Laird, 846 S.W.2d 895, 901B02 (Tex. App.CHouston
[1st Dist.] 1993, writ denied) (holding there was no evidence to support the
existence of any alleged fiduciary duty); West v. Touchstone, 620 S.W.2d
687, 690 (Tex. Civ. App.CDallas  1981, writ ref=d n.r.e.) (holding there was fact issue as to whether agency
relationship existed based on affiant=s
testifying to alleged oral agreement to serve as agent).  





[2]  The Bocanegra court expressly states this
principle, and Aon agrees that it is a correct statement of Texas law.  See
Bocanegra, 605 S.W.2d at 851B52; 
Plate & Platter, Inc., 780 S.W.2d at 456B57.  Though we are bound to apply the
election-of-remedies defense as annunciated by the Supreme Court of Texas, we
note that it seems to unfairly penalize (1) parties, such as Horizon, who
happen to have agreed to mandatory forum-selection clauses requiring that
defendants be sued in different forums, and (2) parties who happen to be unable
to obtain personal jurisdiction over all defendants in the same forum.  See
generally In re Lyon Fin. Servs., Inc., 257 S.W.3d 228, 232 (Tex.
2008) (per curiam) (holding that forum-selection clauses are generally
enforceable, and a party attempting to show that such a clause should not be
enforced bears a heavy burden).  But for these often fortuitous events that preclude
suing all defendants in the same forum, the plaintiff could have sued the
defendants at the same time in the same suit, in which case the election-of-
remedies doctrine would not bar seriatim settlements or recoveries based on
inconsistent factual allegations. See Bocanegra, 605 S.W.2d at 851B52;  Plate & Platter, Inc., 780 S.W.2d at
456B57.   

 





[3]  In addition to citing the allegations in Horizon=s live petition, Aon also cites excerpts from the
deposition in this case of Horizon=s
corporate representative.  Presuming that it is proper to consider these
excerpts in reviewing the factual allegations on which the Claims are based,
these excerpts do not change the analysis.  Some excerpts are substantially
similar to allegations in Horizon=s
petition.  Aon cites testimony by Horizon=s
corporate representative that (1) A[Aon]
should have told [Beazley] about the number of crew,@ (2) A[Aon] didn=t give any thought at all to disclosures necessary
[sic],@ (3) AI think it is
incumbent on [Aon] to provide any additional C if [Aon] had additional facts, to give it to the underwriters. Or if
[Aon] need[ed] additional facts, to come back to [Horizon] and as[k] for
clarification,@ (4) A[Aon] didn=t come back and say . . . what do you mean by general
barge maintenance? [Aon] didn=t ask [Horizon]
. . . to expand on any of that,@ (5) because
Beazley=s lead underwrite did not have any experience with
this type of barge, A[Aon] should have offered more information or told
[Horizon] that [the lead underwriter] was not an expert in this field,@ and (6) AI=m saying that there was a substantial risk that
because of the representations or lack thereof made by Aon as our broker, Lloyd=s had something to hang their hat on.@  These statements do not show that Horizon is
alleging that there was no coverage under the Policy, that the Policy was
invalid due to the failure to make all required disclosures, or that Aon failed
to provide Horizon with insurance coverage.

 





[4]  The Metroflight court noted that the
election-of-remedies doctrine seems contrary to the public policy of
encouraging settlement.  See Metroflight, Inc., 581 S.W.2d at 708.  The
election-of-remedies defense does not apply to seriatim settlements based on
inconsistent factual allegations that were simultaneously made against
defendants in the same case.  See Tex.
R. Civ. P. 48;  Bocanegra, 605 S.W.2d at 851B52; Plate & Platter, Inc., 780 S.W.2d at
456B57.  If, for various reasons that may be beyond the
plaintiff=s control, a plaintiff cannot sue two defendants in
the same forum, then it still may avoid the election-of-remedies defense by
settling both suits at the same time.  If the defendant in one suit is willing
to settle but the defendant in the other suit to which the election-of-remedies
doctrine otherwise would apply is unwilling to settle at that time, then the
election-of-remedies defense encourages the plaintiff not to settle the first
suit until the second suit is ready to settle; otherwise the settlement of the
first suit would bar any recovery in the second suit.  In Bocanegra,
Justice Campbell noted in his concurring opinion that the election-of-remedies
doctrine is contrary to the public policy in favor of settlement, and he
asserted that the court should overrule Huckabee.  See Bocanegra,
605 S.W.2d at 854B55 (Campbell, J., concurring); see also Forest Oil
Corp. v. McAllen, 268 S.W.3d 51, 60 & n.3 (Tex. 2008) (stating that
settlements are highly favored because they avoid the uncertainties regarding
the outcome of litigation and the often exorbitant amounts of time and money to
prosecute or defend claims at trial, citing Justice Campbell=s concurring opinion in Bocanegra for a similar
proposition).  

 





[5]  Counsel for Aon confirmed this fact at oral
argument.